0325

Robin LANGLEY, Appellant, v. James Lee BOYTER and Concrete Specialties of America, Respondents.

(325 S. E. (2d) 550)

Court of Appeals

*Kenneth M. Suggs*, of *Suggs & Kelly*, Columbia, *for appellant.*

*H. Fred Kuhn, Jr.*, Beaufort, *on behalf of S. C. Trial Lawyers Ass'n;* and *Charles E. Carpenter, Jr.*, Columbia, and *Lawrence B. Orr*, Florence, *on behalf of S. C. Defense Trial Attys.' Ass'n, for amicus curiae.*

*Robert G. Currin, Jr.*, of *Nelson, Mullins, Grier & Scarborough*, Columbia, *for respondents.*

Heard Jan. 26, 1984.

Decided Nov. 29, 1984.

SANDERS, Chief Judge:

The single question presented by this appeal is whether the common law doctrine of contributory negligence should be abrogated by this court and the doctrine of comparative negligence adopted in its place.[1]

---

[1] In addition to the excellent arguments and briefs of the parties in this case, we appreciate the *Amicus Curiae* briefs filed by the South Carolina Defense Trial Attorneys' Association and the South Carolina Trial Lawyers Association. In the words of Sir Walter Scott: "Wild work they make of it; for the Whigs were as dour as the Cavaliers were fierce, and it was which should first tire the other." W. Scott, "Wandering Willie's Tale," *Redgauntlet* (1824).

## I

## THE FACTS

Appellant Robin Langley sued respondents James Lee Boyter and Concrete Specialties of America alleging in her complaint that she suffered serious personal injuries when the car she was driving collided with a car being driven toward her by Mr. Boyter as an agent of Concrete Specialties. Her complaint further alleged that the collision and her resulting injuries were caused by Mr. Boyter's driving on "the wrong side of the road," and that he was negligent, careless and reckless in driving too fast for conditions and in failing to maintain a proper lookout and control of the car he was driving. Mr. Boyter answered with a general denial of the material allegations of the complaint and further alleged that any injury or damage suffered by Ms. Langley was caused by her own negligence, recklessness, wilfulness and wantonness "in operating her vehicle on the wrong side of the road," in failing to maintain a proper lookout and control of her car and in failing to brake or steer her car so as to avoid the collision. Finally, Mr. Boyter pleaded in his answer Ms. Langley's "contributory negligence, recklessness, wilfulness and wantonness as a complete bar to this action."

At trial, Ms. Langley testified that as she drove her car into a curve, the car being driven by Mr. Boyter "came around the curve into my lane and hit me." She went on to testify that the front of the Boyter car struck her car at "the front left fender between the fender and the door," and after the impact both cars came to rest on her side of the road with her car partially "off the road in my lane."

A highway patrolman who investigated the accident testified he found Ms. Langley's car on her side of the road with its front end on the shoulder and Mr. Boyter's car in Ms. Langley's lane of travel.

Mr. Boyter testified he did not cross from his half of the road into the opposite lane before impact and he believed Ms. Langley's car was partially in his lane when the collision occurred.

Another witness testified Ms. Langley was driving at an excessive rate of speed and her car crossed over the center line of the road by "approximately one and a half to two feet" prior to the collision.

At the pre-trial conference, Ms. Langley moved to strike the defense of contributory negligence and requested the judge to charge the doctrine of comparative negligence instead. The trial judge denied these motions and at trial charged the doctrine of contributory negligence. Ms. Langley excepted to the charge and again requested that the doctrine of comparative negligence be charged. The trial judge denied this request. The case was submitted to the jury which returned a verdict for Mr. Boyter and Concrete Specialties. Following the verdict, Ms. Langley moved for a new trial on the ground that the trial judge refused to strike the defense of contributory negligence and charge the doctrine of comparative negligence. The trial judge denied this motion. Ms. Langley then appealed.

Respondents first argue that even if the doctrine of comparative negligence were to be recognized in South Carolina, it would be inapplicable to this case because the only question of fact was whether Mr. Boyter or Ms. Langley was driving on the wrong side of the road. We reject this argument. In our view of the evidence, the jury could have found that negligence by both Mr. Boyter and Ms. Langley caused the collision. For example, it could have found Mr. Boyter was driving on the wrong side of the road and Ms. Langley was driving too fast for conditions. The jury also could have found Ms. Langley and Mr. Boyter were both driving partially on the wrong side of the road. If a finding of negligence by both parties was not possible, the defense of contributory negligence pleaded by Mr. Boyter and Concrete Specialties and the charge of the trial judge on this defense would have been inappropriate, and the case would have to be reversed on that ground alone. *See White v. Fowler*, 276, S. C. 370, 278 S. E. (2d) 777 (1981) (it is reversible error to charge a correct principle of law when the principle is inapplicable to the issues on trial).

## II

### THE DOCTRINE OF CONTRIBUTORY NEGLIGENCE AND ITS HISTORY

Generally speaking, under the doctrine of contributory negligence, if the negligence of a plaintiff contributed to his damages, he is barred from recovering

anything against a defendant guilty of even greater negligence.[2] The earliest case recognizing the doctrine is *Butterfield v. Forrester*, 11 East 60, 103 Eng. Rep. 926 (1809).[3] In that case, the defendant obstructed a public road by placing a pole across a part of it. The plaintiff, riding his horse too fast to see the pole, rode into it and was injured. The doctrine of contributory negligence was announced by Lord Chief Justice Ellenborough.

> One person being at fault will not dispense with another's using ordinary care for himself. Two things must concur to support this action, an obstruction in the road by the fault of the defendant, and no want of ordinary care to avoid it on the part of the plaintiff.

*Butterfield*, 103 Eng. Rep. at 927.

The doctrine was first adopted in this country in *Smith v. Smith*, 2 Pick. 621 (Mass. 1824). Most states proceeded to adopt the doctrine soon thereafter. H. Woods, *The Negligence Case: Comparative Fault* § 1:4 (1978) (hereafter cited as Woods, *The Negligence Case*).

South Carolina first recognized the doctrine in dictum in *Freer v. Cameron*, 38 S.C.L. (4 Rich.) 228 (1851). In that case the trial judge charged the jury that if, under all the circumstances, the plaintiff could have avoided the accident by the exercise of that degree of prudence which a reasonable person might be expected to exercise in her position, then she ought not to recover. The plaintiff apparently took no exception to this charge and did not dispute the law thus stated on appeal. Consequently, the Court of Appeals decided the issue

---

[2] We recognize this statement is neither a complete definition of the doctrine of contributory negligence nor a paragon of clarity. Most courts use the words themselves to define the doctrine, and all complete definitions become even more convoluted when the variously recognized exceptions and modifications to the doctrine (none of which are applicable to the facts of this case) are taken into account. *See, e.g.,* 57 Am. Jur. (2d) *Negligence* § 288 (1971); 65A C.J.S. *Negligence* § 116 (1966).

[3] Some commentators trace the doctrine of contributory negligence to earlier times. *See, e.g., 8 Holdsworth, A History of the English Law* 459-61 (1926) (contributory negligence was "a natural and a logical doctrine" which found expression in 17th century opinions but was recognized much earlier). However, most modern courts and scholars agree with Professor Prosser in attributing the first recorded formulation of the doctrine to *Butterfield.* W. Prosser, *Law of Torts* § 65 at 416 n. 1 (4th ed. 1971).

of contributory negligence on a point of evidence, not a question of law: "We cannot discover in the evidence reported anything which makes the law cited for the defendants, and not disputed, available for their protection." *Freer* at 232. Although the defendants cited *Butterfield* as authority, that decision was neither mentioned nor approved in the opinion of the Court. It therefore appears that South Carolina first acknowledged the doctrine of contributory negligence in a case where it was held inapplicable and in which the issue of whether it should be adopted as the common law of this State was not raised. Subsequent cases simply cited *Freer* without further analysis as precedent for applying the doctrine.[4] The doctrine has resided in this house of cards ever since. Surprisingly, we can find no reported South Carolina case in which it has been challenged.

It can be argued that a possible basis for recognition of the doctrine is found in the reception statute passed by the provincial assembly in 1712. 2 S. C. Stat. 401 (1712). This statute provided:[5]

> That all and every part of the Common Law of England, where the same is not altered by the above enumerated Acts, or inconsistent with the particular constitutions, customs and laws of this Province . . . is hereby enacted and declared to be of . . . full force in this Province. . . .

2 S. C. Stat. at 413-414. In 1812, our Supreme Court first addressed the effect of the Act of 1712 in *Shecut v. McDowel,* 6 S.C.L. (1 Tread.) 35, 38 (1812):

> The . . . question . . . is whether . . . this Court is to be governed by the principles of the Common Law, as settled in England . . . [O]ur act of Assembly, passed in the year 1712, says, the Common Law of England shall be in

---

[4] *See, e.g., Wade v. The Columbia Electric &c. Co.,* 51 S. C. 296, 29 S. E. 233 (1897); *Wilson v. Southern Ry.,* 73 S. C. 481, 53 S. E. 968 (1906); *Bradford v. F. W. Woolworth Co.* 141 S. C. 453, 140 S. E. 105 (1927).

[5] The Act of 1712 was apparently embodied in the South Carolina Code until 1912, when it was omitted from codification until restored in 1972, and is presently codified as Code section 14-1-50. However, in 1919 our Supreme Court held the omission of no consequence because the Act was "merely declaratory in its nature." *State v. Charleston Bridge Co.,* 113 S. C. 116, 101 S. E. 657, 660 (1919).

as full force and virtue in this State as in England. And even if it did not, I do not know by what other law we should be governed; for the Common Law is as much the law of this country as of England. I do not mean to say, that we are bound by every decision made by the courts of England. We have a right to take our own view of the Common Law; but, when a principle of law has been settled for ages, by a series of uniform decisions, the reasons must be very strong, that would authorize a departure from it; and in no case, ought an established rule to be given up, without substituting another in its place. It would be launching into a boundless ocean of uncertainty; without a compass by which to direct our course.

When the statute of 1712 was enacted, the doctrine of contributory negligence had not yet been recognized in England. At the time the Court in *Shecut* defined the extent to which the common law of England is applicable in South Carolina, the doctrine was not a principle of law which had been settled for ages. Rather, it was a mere infant of three years in England and was not even born in this country until some twelve years later. No opinion of our Supreme Court recognizing or applying the doctrine cites or discusses this statute as a basis for doing so. For these reasons, we conclude that the doctrine of contributory negligence has no independent statutory basis in South Carolina as a doctrine of general application.

Three South Carolina statutes make contributory negligence a bar to recovery in certain cases and require that the plaintiff plead and prove he was not contributorily negligent. S. C. Code Ann. § 5-7-70 (1976) (action against municipality to recover damages to person or property received through defect or mismanagement of anything under the control of municipality); § 57-5-1840 (action against State Highway Department); § 57-17-810 (action against county for damages caused by defective highways, causeways, bridges or ferries). A fourth South Carolina statute provides that "common law" defenses, including the defense of contributory negligence, are available to an employer when sued by an employee who elects not to proceed under the South Carolina Workers'

Compensation Law.[6] S. C. Code Ann. § 42-1-520 (1976). However, no South Carolina statute provides for the general application of the doctrine of contributory negligence or its application to the facts of this case. Thus the doctrine is not a creation of statute in South Carolina.

Since the doctrine was first adopted in this country, numerous exceptions have eroded the scope of its application. One exception is the rule that the negligence of the plaintiff is no defense when the defendant's conduct is wilful, wanton or reckless. Woods, *The Negligence Case* § 1:6. *See also Davenport v. Walker*, 280 S. C. 588, 313 S. E. (2d) 354 (S. C. App. 1984), citing *Oliver v. Blakeney*, 244 S. C. 565, 137 S. E. (2d) 772 (1964) (simple contributory negligence is not a defense to reckless or wilful misconduct).

The most important exception is the doctrine of last clear chance which originated in the case of *Davies v. Mann*, 10 M. & W. 546, 152 Eng. Rep. 588 (1842). Woods, *The Negligence Case* § 1:7. In that case, the defendant negligently ran into the plaintiff's donkey which he had left tied up in the highway. The court held that the negligence of the plaintiff in leaving the donkey in the road did not bar his recovery because the defendant had the "last clear chance" to avoid the accident.[7]

Application of this exception has resulted in enormous confusion among, and even within, the various states. *See* W. Prosser, *Law of Torts* § 66 at 428 (4th ed. 1971). The courts in South Carolina have not escaped difficulty in applying the doctrine of last clear chance. *See, e.g., Thomas v. Bruton*, 270 F. Supp. 33, 35 (D.S.C. 1967) ("[The doctrine of last clear chance] is an exception or a qualification or modification to the doctrine of contributory negligence. . . ."); *Eastern Brick and Tile Co. v. United States*, 281 F. Supp. 216, 221 (D.S.C. 1968), citing *Seay v. Southern Ry.-Carolina Division*, 205 S. C. 162, 31 S. E. (2d) 133, 138 (1944) "[The doctrine of last clear

---

[6] Sometimes erroneously referred to as the "South Carolina Workmen's Compensation Law."

[7] Professor Prosser refers to last clear chance as "the jackass doctrine," a pejorative having obvious dual implications in view of the great difficulties it has caused both judges and lawyers since 1842. Prosser, *Law of Torts* § 66 at 427 n. 3.

chance] constitutes no exception to the general doctrine of contributory negligence, and does not permit one to recover in spite of contributory negligence."); *Britt v. Seaboard Coast Line Railroad Company*, 281 F. Supp. 481, 487 (D.S.C. 1968) ("The 'last clear chance' doctrine is well settled and has often been applied in this State."); *Brown v. George*, 278 S. C. 183, 294 S. E. (2d) 35, 36 (1982) ("The doctrine [of last clear chance] is not applicable in every case where the defendant alleges the plaintiff was contributorily negligent. It applies only where the antecedent negligence of the plaintiff has become remote in the chain of causation and a mere condition of his injury.").

In 1953, Professor Prosser said no logical reason had ever been given for recognizing the doctrine of last clear chance and suggested:

> The real explanation would appear to be nothing more than a dislike for the defense of contributory negligence, and a rebellion against its application in a group of cases where its hardship is most apparent.

Prosser, *Comparative Negligence*, 51 Mich. L. Rev. 465, 472 (1953).

A discussion of other difficult to apply and widely misunderstood exceptions is found in an article by Professor Lambert in the American Trial Lawyers Association Journal. Lambert, *The Common Law is Never Finished (Comparative Negligence On the March)*, 32 A.T.L.A.J. 741, 743-749 (1968).

The South Carolina Legislature has enacted two statutes which purport to eliminate the defense of contributory negligence in certain cases.[8] S. C. Code Ann. § 15-1-300 (1976) (contributory negligence shall not bar recovery in an action involving a motor vehicle accident, "if such negligence was

---

[8] Two other statutes provide that certain conduct does not constitute contributory negligence. S. C. Code Ann. § 56-5-3220 (1976) (failure of totally or partially blind or otherwise incapacitated person to carry a cane or walking stick or be guided by a guide dog on the streets, highways or sidewalks shall not constitute or be evidence of contributory negligence); § 56-5-6460 (Supp. 1983) (violation of Title 56, Chapter 5, Article 47 [Child Passenger Restraint System] shall not constitute negligence per se, contributory negligence, nor be admissible as evidence in any trial of any civil action).

equal to or less than the negligence which must be established in order to recover from the party against whom recovery is sought"); § 58-17-3730 (contributory negligence of railroad employee does not bar recovery of damages for injury or death in action against railroad).

As hereafter discussed in greater detail, Code section 15-1-300 was ruled unconstitutional as a denial of equal protection under both the state and federal constitutions. *Marley v. Kirby*, 271 S. C. 122, 245 S. E. (2d) 604 (1978). Although obviously similar, the constitutionality of Code section 58-17-3730 has not been challenged. *See, e.g., Boyleston v. Southern Ry. Co.*, 211 S. C. 232, 44 S. E. (2d) 537 (1947).

Four statutes appear to limit or eliminate the application of the doctrine in certain cases, without referring to it by name. S. C. Code Ann. § 15-73-30 (1976) (adopts "comments to § 402A of the Restatement of Torts, Second," as the legislative intent of Chapter 73, Title 15, including comment 'n' which eliminates contributory negligence as a defense in certain products liability cases); § 42-1-510 (employer who elects not to operate under the Workers' Compensation Law cannot defend a suit by an employee subject to that law on the ground "that the employee was negligent"); § 43-33-30 (Supp. 1983) (failure of totally or partially blind or deaf pedestrian to use a guide dog on common carriers or in certain public places does not constitute negligence); § 58-17-1440 ("mere want of ordinary care" is not a defense in actions against railroads for injuries received in a collision at a railroad crossing if required signals not given).

The United States District Court for South Carolina has ruled Code section 58-17-1440 unconstitutional as a denial of equal protection. *Wessinger v. Southern Railway Company*, 470 F. Supp. 930 (D.S.C. 1979).

South Carolina is one of only seven states which still recognize the doctrine of contributory negligence as applicable to negligence actions generally. The doctrine has long since been abandoned virtually everywhere it was once recognized, including in England, the country of its birth. Prosser, *Comparative Negligence* 466-467. In its place, courts and legislatures have developed various systems that by some methods, in some situations, apportion damages, at least in

part, on the basis of the relative fault of the responsible parties. These systems are referred to collectively as the doctrine of comparative negligence.

## III

### THE DOCTRINE OF COMPARATIVE NEGLIGENCE AND ITS HISTORY

Generally speaking, under the doctrine of comparative negligence, a plaintiff is allowed to recover the proportion of damages not attributable to his own fault. As Professor Prosser has indicated.

> "Comparative Negligence" properly refers only to a comparison of the fault of the plaintiff with that of the defendant. It does not necessarily result in any division of the damages, but may permit full recovery by the plaintiff notwithstanding his contributory negligence.

Prosser, *Comparative Negligence* at 465 n. 2. Nevertheless, the comparative negligence systems that are in operation in this country today do not usually operate in this precise manner. Rather, they almost always involve some method of dividing damages when the plaintiff has been contributorily negligent.

Some commentators trace the roots of the doctrine to Roman law via the Digest of Justinian completed in A.D. 533. Woods, *The Negligence Case* § 1:9 at 17, citing Mole & Wilson, *Comparative Negligence*, 17. Cornell L. Q. 333 (1932). While the ancient lineage claimed for the doctrine is debatable, the concept is by no means younger than springtime.

Early English admiralty cases applied a rule which divided damages between the plaintiff and the defendant when only the defendant was at fault. Marsden, *Collisions at Sea* 135 (8th ed. 1923). Beginning in the eighteenth century English admiralty courts adopted a rule which provided for an equal division of. damages when both parties were negligent. Marsden at 195. These courts were apparently influenced by principles of civil law which were applied by other countries engaged in maritime shipping. Prosser, *Comparative Negligence* 475-476. Another factor may have been the fact these courts had no juries to mistrust.

English courts continued to divide damages equally where both parties were negligent in causing a collision between ships until 1911 when a statute was adopted providing for a division of damages "in proportion to the degree in which each vessel was at fault." The English Maritime Conventions Act of 1911, 1 & 2 Geo. V, c 57. American courts also divided damages equally between negligent parties in these cases until 1975 when the United States Supreme Court adopted a rule, without benefit of statute, apportioning damages based on degree of fault whenever it was possible to do so. *United States v. Reliable Transfer Co., Inc.* 421 U. S. 397, 95 S. Ct. 1708, 44 L. Ed. (2d) 251 (1975).

According to dictum contained in a recent Illinois case, in 1858 that state became the first to recognize the doctrine of comparative negligence. *Alvis v. Ribar*, 85 Ill. (2d) 1, 52 Ill. Dec. 23, 421 N. E. (2d) 886 (1981), citing *Galena & Chicago Union R. R. Co. v. Jacobs*, 20 Ill. 478 (1858). A version of the doctrine appears to have been applied in Illinois until 1885, when contributory negligence was recognized as a complete bar to recovery. *Alvis*, 52 Ill. Dec. 23, 27, 421 N. E. (2d) 886, 890, citing *Calumet Iron & Steel Co. v. Martin*, 115 Ill. 358, 3 N. E. 456 (1885), *City of Lanark v. Dougherty*, 153 Ill. 163, 38 N. E. 892 (1894) and Green, *Illinois Negligence Law*, 39 Ill. L. Rev. 36 (1944).[9]

The courts and legislatures of several other states appear to have flirted with the concept of comparative negligence during the nineteenth century. Prosser, *Comparative Negligence* 477. However, these early attempts were not true applications of the doctrine as it is generally understood today, and most of them were abandoned before the end of the century. V. Schwartz, *Comparative Negligence* § 1.5 (1974).

---

[9] Illinois has had a checkered history in recognizing the doctrine of comparative negligence. After first recognizing and then abandoning a version of that doctrine in the 1800's, Illinois then applied the doctrine of contributory negligence until 1967 when its Court of Appeals adopted a modified form of the doctrine of comparative negligence. *Maki v. Frelk*, 85 Ill. App. (2d) 439, 229 N.E. (2d) 284 (1967). However, in 1968, the Illinois Supreme Court reversed *Maki* and returned the state to its nineteenth century posture. *Maki v. Frelk* 40 Ill. (2d) 193, 239 N. E. (2d) 445 (1968). Finally, in 1981, the Illinois Supreme Court changed its mind and abolished the doctrine of contributory negligence altogether in favor of the "pure" version of the doctrine of comparative negligence. *Alvis v. Ribar*, 85 Ill. (2d) 1, 52 Ill. Dec. 23, 421 N. E. (2d) 886 (1981).

The doctrine of comparative negligence was first widely recognized in this country in 1908 with the adoption of the Federal Employers' Liability Act (F.E.L.A.) of April 22, 1908, ch. 149, § 3, 35 Stat. 66, 45 U.S.C. § 53. The Act applied to suits brought against railroads by their employees who were injured while engaged in interstate commerce. It provided that contributory negligence would not bar recovery, but the amount of damages recovered would be reduced in proportion to the amount of negligence attributable to the plaintiff. This Act became the catalyst for a flood of state statutes which established the doctrine of comparative negligence in cases involving injuries to industrial employees, especially those of railroads. Prosser, *Comparative Negligence* 478. One such state statute applying to railroad employees engaged in intrastate commerce was enacted in South Carolina. S. C. Code Ann. § 58-17-3730 (1976).

In 1920, Congress adopted the doctrine of comparative negligence for cases arising under the Merchant Marine (Jones) Act (Act of June 5, 1920, as amended, ch. 250, § 33, 41 Stat. 1007, 46 U.S.C. § 688) and under the Death on the High Seas Act (Act of March 30, 1920, ch. 111, § 6, 41 Stat. 537, 46 U.S.C. § 766).

In 1910, Mississippi became the first state to adopt a comparative negligence statute of general application. Woods, *The Negligence Case* § 1:11 at 24, citing Miss. Code Ann. § 11-7-15 (1972). Florida was the first state in this century to adopt the doctrine judicially, doing so in 1973. Woods, *The Negligence Case* § 1:11 at 27, citing *Hoffman v. Jones*, 280 So. (2d) 431 (Fla. 1973).[10]

When Professor Turk wrote his memorable article, *Comparative Negligence on the March*, 28 Chicago-Kent L. Rev. 189 (1950), only a few states applied the doctrine in any form

---

[10] Earlier in this century, the Georgia Supreme Court began to recognize apportionment of damages in negligence actions generally by the unique blending of an 1860 statute providing for a diminution of damages when a negligent plaintiff is injured in railroad operations with another statute providing that a "defendant is not relieved [from liability], although the plaintiff may in some way have contributed to the injury sustained." *See* Schwartz, *Comparative Negligence* §§ 1.4-1.5, and Hilkey, *Comparative Negligence in Georgia*, 8 Ga. B. J. 51 (1945). Professor Prosser has called this "a remarkable *tour de force* of [statutory] construction." Prosser, *Law of Torts* § 67 and 436.

to negligence actions generally. Since then the "march" he referred to has become a stampede. Today, some version of the doctrine of comparative negligence, as a doctrine of general application, has been adopted either judicially or legislatively by a vast majority of the states. Including Indiana, whose statute is effective next year, a total of forty-three states now apply the doctrine in one form or another to negligence actions generally.[11]

The courts in four states have refused to recognize the doctrine of comparative negligence judicially, considering it

[11] (1) Alaska, *Kaatz v. State,* 540 P. (2d) 1037 (Alaska 1975); (2) Arizona, Ariz. Rev. Stat. Ann. § 12-2505 (Supp. 1984); (3) Arkansas, Ark. Stat. Ann. §§ 27-1763 to -1765 (1979); (4) California, *Li v. Yellow Cab Company of California,* 13 Cal. (3d) 804, 532 P. (2d) 1226, 119 Cal. Rptr. 858 (1975); (5) Colorado, Colo. Rev. Stat. § 13-21-111 (1973 & Supp. 1983); (6) Connecticut, Conn. Gen. Stat. § 52-572h to -572o (1983); (7) Florida, *Hoffman v. Jones,* 280 So (2d) 431 (Fla. 1973); (8) Georgia, Ga. Code Ann. § 105-603 (Supp. 1982); (9) Hawaii, Hawaii Rev. Stat. § 663-31 (1976); (10) Idaho, Idaho Code §§ 6-801 to -806 (1979); (11) Illinois, *Alvis v. Ribar,* 85 Ill. (2d) 1, 52 Ill. Dec. 23, 421 N. E. (2d) 886 (1981); (12) Indiana, Ind. Code Ann. §§ 34-4-33-1 to -8 (Burns Supp. 1983); (13) Iowa, *Goetzman v. Wichern,* 327 N. W. (2d) 742 (Iowa 1982); (14) Kansas, Kan. Stat. Ann. § 60-258a to 258b (1976); (15) Kentucky, *Hilen v. Hays,* 673 S. W. (2d) 713 (Ky. 1984); (16) Louisiana, La. Civ. Code Ann. art. 2323 (West Supp. 1983); (17) Maine, Me. Rev. Stat. Ann. tit. 14, § 156 1980); (18) Massachusetts, Mass. Gen. Laws Ann. ch. 231, § 85 (West Supp. 1983); (19) Michigan, *Placek v. City of Sterling Heights,* 405 Mich. 638, 275 N. W. (2d) 511 (1979); (20) Minnesota, Minn. Stat. Ann. §§ 604.01-.02 (West 1982); (21) Mississippi, Miss. Code Ann. § 11-7-15 (1972); (22) Missouri, *Gustafson v. Benda,* 661 S. W. (2d) 11 (Mo. 1983); (23) Montana, Mont. Code Ann. §§ 27-1-702 to -703 (1983); (24) Nebraska, Neb. Rev. Stat. § 25-1151-(1979); (25) Nevada, Nev. Rev. Stat. § 41.141 (1979); (26) New Hampshire, N. H. Rev. Stat. Ann. § 507:7-a (Supp. 1979); (27) New Jersey, N. J. Stat Ann. §§ 2A:15-5.1 to -5.3 (West Supp. 1983-1984); (28) New Mexico, *Scott v. Rizzo,* 96 N. M. 682, 634 P. (2d) 1234 (1981); (29) New York, N. Y. Civ. Prac. Law § 1411 (McKinney 1976); (30) North Dakota, N. D. Cent. Code § 9-10-07 (1975); (31) Ohio, Ohio Rev. Code Ann. § 2315.19 (Page 1982); (32) Oklahoma, Okla. Stat. Ann. tit. 23, §§ 11-14- (West Supp. 1982-1983); (33) Oregon, Or. Rev. Stat. § 18.470 (1981); (34) Pennsylvania, Pa. Stat. Ann. tit. 42, § 7102 (Purdon 1982 and Supp. 1983-1984); (35) Rhode Island, R. I. Gen. Laws §§ 9-20-4 to -4.1 (Supp. 1982); (36) South Dakota, S. D. Comp. Laws Ann. § 20-9-2 (1979); (37) Texas, Tex. Rev. Civ. Stat. Ann. art. 2212a (Vernon Supp. 1982-1983); (38) Utah, Utah Code Ann. §§ 78-27-37 to -43 (1953); (39) Vermont, Vt. Stat. Ann. tit. 12, § 1036 (Supp. 1983); (40) Washington, Wash. Rev. Code Ann. §§ 4.22.005-.920 (Supp. 1983-1984); (41) West Virginia, *Bradley v. Appalachian Power Company,* 163 W. Va. 332, 256 S. E. (2d) 879 (1979); (42) Wisconsin, Wis. Stat. Ann. § 895.045 (West 1983). (43) Wyoming, Wyo. Stat. § 1-1-109 (1977). *See generally Hilen v. Hays;* Me. Rev. Stat. Ann. tit. 14, § 156 (Supp. 1983); Schwartz, *Comparative Negligence* § 1.

more appropriate to defer to their legislatures.[12] In the three remaining states there has been both judicial and legislative silence on adopting the doctrine as a doctrine of general application. Two of these are North Carolina and Virginia.[13] The third is South Carolina.

The South Carolina statute previously cited as purporting to abolish the doctrine of contributory negligence in motor vehicle accident cases also purports to adopt a form of the doctrine of comparative negligence in those cases. S. C. Ann. § 15-1-300 (1976).[14] As we have said, this statute was ruled unconstitutional by our Supreme Court in *Marley*. The Court based its decision on a violation of the equal protection clauses of the state and federal constitutions because the doctrine of comparative negligence was provided only to people involved in motor vehicle accidents. The Court was careful to add that it recognized the validity of the doctrine, if generally applied.[15]

---

[12] *See Golden v. McCurry*, 392 So. (2d) 815 (Ala. 1980); *Rabar v. E. I. duPont de Nemours & Co., Inc.*, 415 A. (2d) 499 (Del. Super. Ct. 1980); *Harrison v. Montgomery County Board of Education*, 295 Md. 442, 456 A. (2d) 894 (1983); *Gross v. Nashville Gas Company*, 608 S. W. (2d) 860 (Tenn. App. 1980) (Tennessee Court of Appeals deferred to its Supreme Court and legislature).

[13] A recent decision of the Virginia Supreme Court appears to erode substantially the application of the doctrine of contributory negligence in that state and accomplish many of the aims of the doctrine of comparative negligence through the use of the concept of mitigation of damages. *Lawrence v. Wirth*, 226 Va. 408, 309 S. E. (2d) 315 (1983); *see also*, Le Bel, *Contributory Negligence and Mitigation of Damages: Comparative Negligence Through the Back Door*, Vol. X, No. 4, Va. B. J. (Fall 1984).

[14] In 1936, a young law student made the following perceptive observation:

> [I]f the shifting of loss is to be based on fault, the comparative negligence statutes at least provide a more rational approach to the problem [of distributing costs of automobile accidents] than the crude doctrines of the common law.

Nixon, *Changing Rules of Liability in Automobile Accident Litigation*, 3 Law & Contemp. Prob. 476, 483 (1936). Thirty-eight years later the South Carolina Legislature apparently agreed by enacting Code section 15-1-300. Ironically, it was the same year the author of these prophetic words encountered larger legal problems causing him to resign from the Bar and as President of the United States.

[15] *See Taylor v. Bridgebuilders, Inc.* 275 S. C. 236, 269 S. E. (2d) 337 (1980), *Stockman v. Marlowe*, 271 S. C. 334, 247 S. E. (2d) 340 (1978) and *Williams v. Barry*, 271 S. C. 295, 247 S. E. (2d) 319 (1978) (cases tried before *Marley* in which the statute held unconstitutional in that case was applied).

Our Supreme Court has had occasion to mention the doctrine of comparative negligence in several other cases.[16] While the Court obviously did not recognize the doctrine of comparative negligence, as a doctrine of general application, in these cases or any other, it does not appear the Court has ever been asked to do so. Thus, the absence of the doctrine of comparative negligence in South Carolina, like the presence of the doctrine of contributory negligence, has been brought about because, until now, no one has ever questioned which doctrine should be applied.

## IV

## JUDICIAL v. LEGISLATIVE CHANGE

Legitimate arguments are made that the courts should defer to their legislatures on the question here presented. Whenever any court contemplates making a change in the law, it should first consider whether the change contemplated is one which has been addressed, or can better be addressed, by the legislature as the more direct representative of the people. We have considered deferring to the legislature in the instant case and have concluded this is not appropriate under the circumstances.

---

[16] See, e.g., McLean v. Atlantic Coast Line R. Co., 81 S. C. 100, 61 S. E. 900, 904 (1908) (held plaintiff contributorily negligent as a matter of law and observed "the doctrine of comparative negligence is not recognized"); Gladden v. Southern Ry. Co., 142 S. C. 492, 141 S. E. 90, 100 (1928) (held jury charge by trial judge improperly defined contributory negligence and noted "the doctrine of comparative negligence does not prevail in this state"); Bedford v. Armory Wholesale Grocery Co., 195 S. C. 150, 10 S. E. (2d) 330 (1940) (held not error for trial judge to refuse requested charge that doctrine of comparative negligence does not exist in South Carolina); Coleman v. Lurey, 199 S. C. 442, 20 S. E. (2d) 65, 66 (1942) (held improper for trial judge to charge jury: "where the plaintiff and defendant are equally at fault in producing an injury, where both are negligent, one is just as negligent as the other, the law leaves them where it finds them," and noted "we do not recognize or apply the doctrine of comparative negligence in this State unless it is required by statute"); Boyleston v. Southern Ry. Co., 211 S. C. 232, 44 S. E. (2d) 537 (1947) (held general rule that doctrine of comparative negligence is not recognized in South Carolina is subject to statutory exception in suits against railroads by their employees); Sturcken v. Richland Oil Company, 248 S. C. 355, 150 S. E. (2d) 341 (1966) (held jury charge on doctrine of contributory negligence was improper where charge referred to "grades" of negligence).

Within constitutional limits, courts should defer to their legislatures in construing statutes, so as to give effect to legislative intent. Consistent with this principle, we have deferred in past cases to the legislature by applying statutes enacted by it without regard to our own view of "wisdom and justice." *See Busby v. State Farm Mutual Automobile Insurance Company*, 280 S. C. 330, 312 S. E. (2d) 716 (S. C. App. 1984); *S. C. Law Enforcement Division v. The "Michael and Lance,"* 281 S. C. 339, 315 S. E. (2d) 171 (S. C. App. 1984). However, the South Carolina Legislature has not passed any statute applicable to this case which provides for either the doctrine of contributory negligence or comparative negligence.

In *Marley*, the Court said a statute providing for the doctrine of comparative negligence as a doctrine of general application would be valid. While it is true the legislature has failed to enact any such statute since the court said it could validly do so, it would be wrong to conclude we should be bound, or even guided, by its inaction. We agree with the Michigan Supreme Court when it said: "As a practical matter, there are a variety of reasons why bills or ideas do not become law and it is not the role of the courts to guess what legislative silence means." *Kirby v. Larson*, 400 Mich. 585, 256 N. W. (2d) 400, 420 (1977). When the courts are asked to reexamine the justice of an outmoded common law doctrine, it is their duty to do so. The growth of the common law should not be halted by shifting responsibility from the courts to the legislature. As the Illinois Supreme Court has said, "Such a stalemate is a manifest injustice to the public." *Alvis*, 421 N. E. (2d) at 896.

We have considered the argument that the legislature has approved the doctrine of contributory negligence by implication in enacting the several statutes which refer to it. We reject this argument because we believe that when the legislature enacted these statutes, it did not focus on the merits of the doctrine but rather conformed its statutes to the law as then applied by our Supreme Court. As Professor Phillips has concluded in his recent article exhaustively addressing this question, "In any event, there is no legislation to prevent the South Carolina judiciary from applying comparative fault to all negligence actions." Phillips, *The Case for Judi-*

*cial Adoption of Comparative Fault in South Carolina*, 32 S.C.L. Rev. 295, 300 (1980).

The doctrine of contributory negligence, as a doctrine of general application, is a judicial creation in South Carolina. It is within the power of courts to abrogate that which they have created. In each of the states that have judicially adopted the doctrine of comparative negligence, the court addressed the propriety of judicial versus legislative adoption and concluded that deference to the legislature was not proper. *See, e.g., Alvis*, 421 N. E. (2d) 886, 895, and cases cited therein. Indeed, the United States Supreme Court deemed it proper in admiralty cases to "adopt to the proportional fault doctrine without congressional action." *Reliable Transfer Co.*, 421 U. S. at 410, 95 S. Ct. at 1715, citing G. Gilmore and C. Black, *The Law of Admiralty* 531 (2d ed. 1975).

As Professor Prosser has concluded:

> There never has been any essential reason why the change could not be made without a statute by the courts which made the contributory negligence rule in the first place. . . .

Prosser, *Law of Torts* § 67 and 434.

We have also considered and rejected the argument that the legislature is better suited to adopt the doctrine of comparative negligence by statute because such a statute could comprehensively address all situations in which the doctrine would be applied, whereas courts are limited to deciding its application on a case by case basis. We view this argument as suggesting, in essence, that where a court cannot correct all injustice, it should correct none. But even if this argument has some validity in theory, the history of legislative action in the various states which have adopted the doctrine by statute reveals that comprehensive statutes are not usually adopted. Instead, the legislatures often leave questions of how the doctrine will be applied to the courts. Our own legislature obviously did this in enacting Code section 15-1-300 (previously cited as purporting to adopt a version of the doctrine in motor vehicle cases).

## V

## STARE DECISIS AND THE AUTHORITY
## OF THE SOUTH CAROLINA
## COURT OF APPEALS

We next address the argument that we are prevented by previous decisions of our Supreme Court and this court from considering the question here presented.

The doctrine of *stare decisis* says that where a principle of law has become settled by a series of court decisions, it should be followed in similar cases. *State v. Ballance*, 229 N. C. 764, 51 S. E. (2d) 731 (1949). Strictly speaking, *stare decisis* is not a rule of law but is a matter of judicial policy. 20 Am. Jur. (2d) *Courts* § 184 (1965).

In *International News Service v. Associated Press*, 248 U. S. 215, 39 S. Ct. 68, 81, 63 L. Ed. 211 (1918), Justice Brandeis, dissenting, wrote:

> The unwritten law possesses capacity for growth; and has often satisfied new demands for justice by invoking analogies or by expanding a rule or principle.

Justice Sutherland wrote in *Funk v. United States*, 290 U. S. 371, 54 S. Ct. 212, 216, 78 L. Ed. 369 (1933):

> [T]o say that the courts of this country are forever bound to perpetuate such of its rules as, by every reasonable test, are found to be neither wise nor just, because we have once adopted them as suited to our situation and institutions at a particulr time, is to deny to the common law in the place of its adoption a "flexibility and capacity for growth and adaptation" which was "the peculiar boast and excellence" of the system in the place of its origin.

We are obviously aware that the doctrine of contributory negligence has been applied in numerous South Carolina cases for more than a century. While we agree that the need for stability in the law requires that substantial change should not be undertaken hastily or lightly, we also are of the opinion that the need for stability should not be allowed to stultify the natural development of the common law. Neither should courts perpetuate injustice resulting from the ap-

plication of a doctrine in need of reevaluation, no matter how long or often it has been applied.

This attitude is evidenced by our Supreme Court in a number of recent decisions abrogating judicially adopted doctrines.[17] It is also shown in the Court's recognition of doctrines of law.[18] Thus, *stare decisis* does not necessarily foreclose consideration being given to the question of adopting the doctrine of comparative negligence in place of the doctrine of contributory negligence. Whether this court has the authority to do so is another matter.

In one of the early decisions of this court we held: "Where the law has been recently addressed by our Supreme Court, and is unmistakably clear, this court has no authority to change it." *Bain, Exr. v. Self Memorial Hospital,* 281 S. C. 138, 314 S. E. (2d) 603 (S. C. App. 1984), citing *Shea v. State Department of Mental Retardation,* 279 S. C. 604, 310 S. E. (2d) 819 (S. C. App. 1983). While we adhere to this holding, we conclude it is not applicable here. Not only has the single question presented by this appeal not been recently addressed by our Supreme Court, it has never been addressed at all.

South Carolina is an "exception state." This means the South Carolina Supreme Court and this court are "confined to a disposition of appeals upon the exceptions taken...." *Mishoe v. Atlantic Coast Line R. Co.,* 186 S. C. 402, 197 S. E. 97, 106 (1938); *Evans v. Bruce,* 245 S. C. 42, 138 S. E. (2d) 643 (1964); *Bartles v. Livingston,* S. C. 319 S. E. (2d) 707 (S. C. App. 1984); *Ellison v. Heritage Dodge, Inc.,* S. C., 320 S. E. (2d) 716 (S. C. App. 1984). More simply put, appellate courts in this state, like well-behaved children, do not speak unless spoken to and do not answer questions they are not asked. The question here before us has never been answered because

---

[17] *See e.g., King v. Williams,* 276 S. C. 478, 279 S. E. (2d) 618 (1981) (abolished "locality rule" in medical malpractice cases); *Elam v. Elam,* 275 S. C. 132, 268 S. E. (2d) 109 (1980) (abolished doctrine of parental immunity); *Fitzer v. Greater Greenville South Carolina Young Men's Christian Association,* 277 S. C. 1, 282 S. E. (2d) 230 (1981) (abolished doctrine of charitable immunity).

[18] *See, e.g., Ford v. Hutson,* 276 S. C. 157, 276 S. E. (2d) 776 (1981) (recognized cause of action for intentional infliction of emotional distress); *Meetze v. Associated Press,* 230 S. C. 330, 95 S. E. (2d) 606 (1956) (recognized cause of action for invasion of privacy).

it has never been asked. As previously discussed, the doctrine of contributory negligence was first recognized without dispute in a case in which it was held inapplicable. It has been applied unchallenged ever since. The question of whether the doctrine of comparative negligence should be adopted in its place has never before been raised on appeal. Thus, no precedent exists which is determinative of our decision here.

In reaching this conclusion, we are also mindful that this case was first appealed to our Supreme Court and thereafter transferred to this court after its creation. Unlike *Shea* and *Bain*, it presents only a single question to be answered on appeal. It cannot be assumed that the Supreme Court transferred this case to us without being aware of the question it presents. Prior to the case being transferred, a petition was filed with the Supreme Court by the South Carolina Defense Trial Attorneys' Association seeking permission to file an *Americus Curiae* brief. In this petition, the question presented on appeal was specifically called to the attention of the Court. In addition, Ms. Langley filed a petition to argue against precedent with the Supreme Court which also called attention to this question. The Court acted on both petitions before transferring the case to this court. While it is true both petitions were denied without comment, we reject the suggestion of the Defense Attorneys' that this denial constituted a decision by the Court on the merits of this case.

Therefore, we must conclude that when our Supreme Court transferred this case to us, it meant for us to answer the only question which it presents. We will proceed to do so.

## VI

### CONTRIBUTORY NEGLIGENCE v. COMPARATIVE NEGLIGENCE

To paraphrase John Locke, there is nothing less powerful than an idea whose time is gone. In our opinion, the doctrine of contributory negligence is an idea whose time is gone in South Carolina. It is extinct almost everywhere it once existed. It no longer exists in England, the country of its birth. It survives only in parts of this country, where it is threatened and endangered. Indeed, the doctrine of contributory negligence exists today as the Ivory-Billed Woodpecker of the common law.

The continued existence of the doctrine of contributory negligence as presently applied in South Carolina cannot be justified on any logical basis. It is contrary to the basic premise of our fault system to allow a defendant, who is at fault in causing an accident, to escape bearing any of its cost, while requiring a plaintiff, who is no more than equally at fault or even less at fault, to bear all of its cost. As our Supreme Court has observed, "There is no tenet more fundamental in our law than liability follows the tortious wrongdoer." *Fitzer*, 282 S. E. (2d) at 231.

Organizations representing a wide variety of perspectives have taken the position that the doctrine of comparative negligence is the better system. These include the American Bar Association, the Association of Trial Lawyers of America and the Defense Research Institute.[19] Virtually all modern commentators agree, including, among others, Campbell, Fleming, Green, Harper and James, Dreton, Leflar, Malone, Pound, and Prosser.

Those who still argue to retain the doctrine of contributory negligence are an ever shrinking group. Schwartz, *Comparative Negligence* § 21.1. However, we feel it is our responsibility to address the arguments which are made for retention of the doctrine and against adoption of the doctrine of comparative negligence.

It is argued that the numerous exceptions to the doctrine of contributory negligence allow juries sufficient flexibility to do substantial justice, and even where no exception is applicable juries often ignore the doctrine when necessary to render justice.[20]

In our opinion, the very fact courts and legislatures have had to craft so many exceptions to the doctrine of contributory negligence in order to produce justice supports an

---

[19] Schwartz, *Comparative Negligence* § 1.1 at 2, citing Marryott, *The Automobile Accident Reparations System and the American Bar Association,* 6 Forum 79 (1971); A.T.L.A. Monograph, *Comparative Negligence* (1970); D.R.I. Pamphlet No. 8, *Responsible Reform: A Program to Improve the Liability Reparation System* 23 (1969).

[20] This argument in support of the doctrine based on its exceptions and lack of uniform application reminds us of the old story about the man who ate a pair of shoes. When asked how he liked them, he replied that the part he liked best was the holes. Fuller, *The Case of the Speluncean Explorers,* 62 Harv. L. Rev. 616 (1949).

argument against its retention, particularly in view of the difficulties which have been encountered in applying these exceptions. The doctrine of comparative negligence presents a less difficult and easier to understand alternative.

While we agree that juries may often ignore the law because of its harshness, we view this proclivity as a compelling reason to abrogate the doctrine rather than retain it. There is something fundamentally wrong with a rule of law which is so contrary to the convictions of ordinary citizens that, when serving as jurors, they often refuse to enforce it in violation of their oaths. The disrespect for the law engendered by perpetuating such a rule is obvious. *See Hoffman*, 280 So. (2d) 431.

The further argument is made that the doctrine of contributory negligence is a deterrent to carelessness. The fallacy of this argument was pointed out by Professor Prosser:

> [T]he assumption that the speeding motorist is, or should be, meditating on the possible failure of a lawsuit for his possible injuries lacks all reality, and it is quite as reasonable to say that the rule promotes accidents by encouraging the negligent defendant.

Prosser, *Comparative Negligence* at 468.

It is also argued that the apportionment of fault cannot be accomplished by juries. This argument ignores the fact that such apportionment *is* being accomplished by juries in forty-two other states. We have no reason to believe South Carolina juries are any less competent. Of course, even in South Carolina, juries have been apportioning damages in F.E.L.A. cases and cases brought pursuant to Code section 58-17-3730 (previously cited as purporting to adopt comparative negligence in certain actions brought against railroads by their employees).

Although it must be conceded that allocations of fault in many instances must be approximate, in our opinion, verdicts rendered on this basis will come closer to "speaking the truth" than do those rendered on the all-or-nothing basis required by the doctrine of contributory negligence. Furthermore, apportionment of damages is no more approximate or difficult for a jury than, for example, assigning a dollar value to pain and suffering or humiliation or applying the doctrine

of contributory negligence with its numerous exceptions, as now required by our tort system.

The argument is made that adoption of the doctrine of comparative negligence will discourage settlements and thereby add to the workload of our courts. This argument is refuted by a careful study of the experience in Arkansas before and after that state adopted the doctrine.[21] This study found that just as many cases were settled as when the doctrine of contributory negligence was applied. Rosenberg, *Comparative Negligence in Arkansas; A "Before and After" Survey*, 13 Ark. L. Rev. 89 (1959). *See also* Note, *Comparative Negligence — A Survey of the Arkansas Experience*, 22 Ark. L. Rev. 692 (1969). Other commentators have concluded that adoption of the doctrine can actually increase settlements by providing a more realistic approach to determining liability. *See, e.g.*, Pfankuch, *Comparative Negligence v. Contributory Negligence*, 548 Ins. L. J. 725 (1968).

However, even if we were to assume adoption of the doctrine of comparative negligence would increase litigation, we would agree with the response of the United States Supreme Court to this argument:

> [Defendants ask] us to continue the operation of an archaic rule because its facile application out of court yields quick, though inequitable, settlements, and relieves the courts of some litigation. Congestion in the courts cannot justify a legal rule that produces unjust results in litigation simply to encourage speedy out-of-court accommodations.

*Reliable Transfer Co.*, 421 U. S. at 408, 95 S. Ct. at 1714.

Finally, we address the argument that adoption of the doctrine of comparative negligence will cause substantial increases in liability insurance rates. Both the Rosenberg

---

[21] The history of the doctrine of comparative negligence in Arkansas is particularly useful because that state is the only one to have had experience with both the pure and a modified version of the doctrine. In 1955, Arkansas adopted the pure version by a statute drafted by Professor Prosser and known as the "Prosser Act." 1955, Ark. Acts 191. In 1957, this statute was replaced by one providing for a modified version of the doctrine which allows recovery by a negligent plaintiff only if his negligence was "of less degree" than the negligence of the defendant. Ark. Stat. Ann. §§ 27-1763 to -1765 (1979).

study, previously cited, as well as a most thorough survey conducted by Professor Peck refute this argument. Peck, *Comparative Negligence and Automobile Liability Insurance*, 58 Mich. L. Rev. 689 (1960).

In 1969, it was reported that the cost of automobile insurance in *all* the states which recognized the doctrine of comparative negligence was below the national average. Heft, *Comparative Negligence*, 19 Fed. Ins. Counsel Q. 91 (Spring 1969). Of course, we are aware that many variables must be taken into account in predicting insurance rates. However, we find no support for the argument that adoption of the doctrine of comparative negligence will cause rates to increase substantially. But even if this was not the case, we would agree with Professor Pound when he said, "But keeping down insurance rates at the expense of justice is not in keeping with humanitarian ideals of today." Pound, *Comparative Negligence*, 13 NACCA 195, 199 (1954).

For all these reasons we are of the opinion that the common law doctrine of contributory negligence should no longer be applied in South Carolina, and the doctrine of comparative negligence should be adopted in its place. There remains the question of which form of the doctrine of comparative negligence should be adopted.

## VII

### THE VERSIONS OF COMPARATIVE NEGLIGENCE

The four leading versions of the doctrine are the slight-gross version, two modified versions, and the pure version.[22]

Under the slight-gross version, if the defendant's negligence is gross and the plaintiff's negligence is slight, then the plaintiff may recover, with his damages reduced in proportion to his own negligence. This version has been adopted by statute in only two states and has not been looked on with favor by the commentators and courts. There appears to be very little difference in this version from the exception to the doctrine of contributory negligence already recognized in

---

[22] For an excellent discussion of the various forms of the doctrine of comparative negligence see, Comment, *A Call for the Adoption of Comparative Negligence in South Carolina*, 31 S.C.L. Rev. 757 (1980).

South Carolina which provides that a plaintiff guilty of simple contributory negligence is not barred from recovery against a defendant whose conduct is reckless. *See Davenport*, 313 S. E. (2d) 354, 356 n. 2.

The two modified versions of the doctrine of comparative negligence are similar to each other. One allows recovery by the plaintiff if his negligence was *not as great as* the negligence of the defendant. The other modified version allows the plaintiff to recover if his negligence is *not greater than* the defendant's negligence. In both versions, recovery is reduced by the amount of the plaintiff's negligence. The majority of the states have adopted one of these two versions. The recent trend in the states has been toward the latter version.

Under the pure version of comparative negligence, the plaintiff may recover even if his negligence is greater than that of the defendant, with his recovery diminished by the amount of his negligence. This version is recognized in a minority of the states.

The following examples illustrate the application of each of these four versions of the doctrine. In each example, assume the plaintiff's damages are $1,000:

*Plaintiff guilty of slight negligence as compared to defendant's gross negligence.* If the negligence of the plaintiff is 1% and that of the defendant is 99%, under the slight-gross version, the plaintiff would be permitted to recover $990 since his negligence is slight as compared to the gross negligence of the defendant. The same result would be obtained under either of the modified versions and the pure version. Of course, under the doctrine of contributory negligence the plaintiff would recover nothing. Neither would he recover anything in any of the three following examples.

*Plaintiff guilty of the lesser negligence.* If the negligence of the plaintiff is 25% while that of defendant 75%, under the slight-gross version, the plaintiff would not be permitted to recover anything since his negligence is not slight in comparison with that of defendant. Under the not-as-great-as version, the plaintiff would be entitled to recover 75% of his damages, or $750. The same result should be obtained under both the not-greater-than and the pure comparative negligence versions.

*Parties equally negligent.* If both plaintiff and defendant are 50% negligent, under the slight-gross version, the action of the plaintiff would obviously fail. Likewise, under the not-as-great-as version plaintiff can recover only if his negligence was not as great as the defendant's negligence. However, under the not-greater-than version, the plaintiff would be entitled to recover $500 from the defendant since the negligence of the plaintiff was not greater than that of the defendant. This would also be the result under the pure comparative negligence approach.

*Plaintiff guilty of the greater negligence.* If the plaintiff is 75% negligent while the defendant is responsible for only 25%, under the slight-gross, not-as-great-as, and not-greater-than versions of comparative negligence, the plaintiff would recover nothing. Only under a pure comparative negligence version would plaintiff recover anything. In this instance, he would be entitled to $250.

In our opinion, only the modified versions of the doctrine and the pure version are worthy of serious consideration. It is our further opinion that the not-greater-than modified version is preferable.

While a sound argument is made for the pure version, it is subject to the criticism that it allows a plaintiff who is the most at fault in causing an accident to recover against a defendant only minimally at fault. *See, e.g., Lamborn v. Phillips Pacific Chemical Co.*, 89 Wash. (2d) 701, 575 P. (2d) 215 (1978) (plaintiff found 99% negligent in causing an accident but awarded verdict of $3,500 based on damages of $350,000). Just as it is unreasonable to require perfect conduct by a plaintiff in order for him to recover anything as required by the doctrine of contributory negligence, it is similarly unreasonable to require perfect conduct by a defendant in order for him to escape liability as provided by the pure version of the doctrine of comparative negligence. Perfection in human behavior is an unrealistic expectation.

We reject the not-as-great-as version because it arbitrarily allows a defendant who is equally at fault in causing an accident to escape responsibility for any of its cost. As Professor Schwartz points out, that is "a situation that occurs with some frequency in the minds of jurors. . . ." Schwartz, *Comparative Negligence* § 21.3 at 344.

We choose the not-greater-than version of the doctrine for essentially two reasons. Unlike the pure version, it does not allow a plaintiff to recover when he has been the most at fault in causing an accident. But, unlike the not-as-great-as version, it does not allow a defendant to escape all responsibility for an accident which he was equally at fault in causing. Instead, the not-greater-than version of the doctrine strikes the reasonable balance of providing that parties equally at fault in causing an accident share equally in its cost.

In choosing this modified version of the doctrine over the pure version, we are also influenced by the conservative approach taken by our Supreme Court in abrogating doctrines of common law. *See, e.g., Brown v. Anderson County Hospital Association,* 268 S. C. 479, 234 S. E. (2d) 873 (1977) (court modified doctrine of charitable immunity only as it applied to hospitals); *Fitzer,* 282 S. E. (2d) 230 (court abolished doctrine of charitable immunity altogether).

## VIII

### CONCLUSION AND APPLICATION

We hold the doctrine of contributory negligence, as it has previously been applied in South Carolina, is abrogated and replaced with the modified form of the doctrine of comparative negligence which permits recovery by a person who has been negligent in causing an accident so long as his negligence is not greater than the negligence of the person against whom recovery is sought, provided, however, that the amount of his recovery shall be reduced in proportion to the amount of his negligence.

We resist the temptation to give our views on how the doctrine of comparative negligence should be applied in various situations not presented by the instant case. It would be improper for us to do so since these issues are not before us. Abundant guidance is available from the many decisions in other states, as well as the voluminous textual materials, as to how these issues should be resolved in every conceivable factual context.

We also decline to express our views as to any changes in the statutory law of this state which may need to be considered in light of this decision. To do so would be an unwar-

ranted invasion of the prerogative of the legislature, in view of our conclusion that there is no statute applicable to the facts of this case.

At the same time, we realize this decision will have substantial impact on the trial of many cases in this state. It is also not difficult to predict that the parties in the instant case may petition this court for rehearing, and if rehearing is denied, thereafter petition the Supreme Court for *certiorari.* The Supreme Court may also take *certiorari* on its own motion. *See* Supreme Court Rules of Practice, Rules 17 and 55. While we have no doubt about the soundness of the decision we have reached, it is our responsibility to provide for an orderly transition in applying this decision. To avoid the confusion which could result in cases tried prior to this decision's becoming final, a stay of its effective date is necessary. We are of the further opinion that we should provide for application of this decision to future cases in the manner most recently adopted by our Supreme Court when it abolished the doctrine of charitable immunity. *See Hupman v. Erskine College,* 281 S. C. 43, 314 S. E. (2d) 314 (1984) (applied decision in Fitzer abolishing charitable immunity prospectively to cases based on causes of action arising after that decision).

We therefore hold that the application of this decision in the instant case and to other cases is stayed until the decision becomes final. By "final" we mean:

In the unlikely event no rehearing is sought, then this decision will become final ten days after the date of this opinion.

If a petition for rehearing is denied and no notice of petition for *certiorari* to our Supreme Court is thereafter filed, then this decision will become final ten days after the date rehearing is denied.

If a notice of petition for *certiorari* to the Supreme Court is filed or if the Supreme Court takes *certiorari* on its own motion, then this decision will become final when the case is finally acted upon by our Supreme Court.

On the date this decision becomes final, it will apply to the instant case and prospectively to all cases based on causes of action which arise on that date or thereafter.

Accordingly, the judgment of the trial court is reversed and this case is remanded for a new trial consistent with this opinion.

Reversed and remanded.

SHAW AND BELL, JJ., concur.