William A. GRANT, in re Estate of Kylisha and Charlie Halfacre, Jr., Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 88–752.

District of Columbia Court of Appeals.

Argued Jan. 28, 1991.

Decided Sept. 20, 1991.

---

Charles C. Parsons, Washington, D.C., for appellant.

Edward E. Schwab, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before STEADMAN, FARRELL and WAGNER, Associate Judges.

STEADMAN, Associate Judge:

This appeal arises out of the deaths of two young children in a fire in a public housing building owned by the District. A survival action was brought against the District on the theory of negligence with respect to the fire alarm system in the complex. In a general verdict,[1] the jury found for the District and against the plaintiff, the personal representative of the estates of the two children.

·The District's defense was based in part on the assertion that, notwithstanding any fault of the District, the negligence of the parents was a superseding cause of the children's deaths. The principal issue on appeal is whether the trial court erred in denying plaintiff's motion for a directed verdict on this issue. We affirm.

## I. THE FACTS [2]

### A.

On November 12, 1982, the day of the fatal fire, Kylisha and Charlie Halfacre, Jr., aged 5 years and 14 months respectively, lived with their parents Charles and Alice Halfacre and their three older sisters (Kim 13, Kathy 10, and Karen 8) in an apartment in a six-unit public housing building. The smoke detector in the Halfacre apartment was wired into the electric circuit for the apartment. Each apartment was metered for electricity separately, and it was the tenant's responsibility to make the monthly payment.

■ On the day of the fire, Mr. Halfacre left home and arrived at work by 7 a.m. Mrs. Halfacre sent three of the girls off to school while Kim, who did not feel well, remained at home. Mrs. Halfacre left the apartment but returned later that morning to take Charlie Jr. to visit a friend. About noon, while Mrs. Halfacre was out, an employee of the local electric company arrived and cut off electrical service to the apartment for failure to make payment.[3] Mrs. Halfacre returned home in the afternoon to find that the electricity had been disconnected but she did not contact her husband or take any steps toward having service

which we have quoted from the temporary act that expired in 1987. The fact that such legislation was being considered by the Council was previously unknown to the court. The new legislation purports to be retroactive to September 30, 1987, and should therefore benefit this appellant.

1. The children's claim was joined in a single action with those of the tenants of another apartment in the building who sustained injuries escaping the fire. The jury rendered a verdict in favor of these other tenants, from which the District has not appealed. These ver-

dicts were not necessarily inconsistent. The claim of the other tenants involved certain elements distinct from plaintiff's; e.g., that the smoke detector in their apartment was inoperable even though the electricity was functioning normally.

2. This was a long and hotly disputed trial. We put the facts, as we must, in the light most favorable to the prevailing party.

3. Something less than $90 was due on the bill. Mr. Halfacre, employed as a steel worker, received an average weekly wage of about $350.

restored. She then took Kylisha and Charlie Jr. to the home of a friend, Dorothy Lewis, left Kim at home, and then "went out" with "a friend" for the rest of the day and evening. Her whereabouts and doings were a subject of some mystery,[4] but in any event she did not check on events at home at any time.

Mr. Halfacre returned home from work sometime after 4:30. Kim and Karen were there; Kathy was at a friend's house. He realized that the electricity had been turned off, but also took no steps to have it restored. He picked up Kylisha and Charlie Jr. from Ms. Lewis, returned home, and prepared dinner for the four children.

Mr. Halfacre left for the evening about 6 p.m., leaving the children a flashlight which had been in use since 4:30 that afternoon to supply light for the apartment. Although he testified that he was helping a friend move furniture, this testimony was impeached by a police officer who said Mr. Halfacre told him he was drinking with friends. In any event, he did not check with home or return there at any time until after the fire.

Before leaving he asked a neighbor, Josephine Ross, "to keep an eye on Kim in case of an emergency" and asked whether Kim could come up there if she had any problem. He did not tell Ms. Ross that Kim had been ill that day, that she was in charge of her younger siblings, or that the electricity was off. Ms. Ross did not check on Kim or the other children during the evening.

Exactly what occurred during the rest of the evening with the Halfacre children was not entirely clear. There was testimony that Kim remained outside with her sisters and others much of the evening. In any event, there came a point when Kylisha and Charlie Jr. were taken back to the apartment and put on the living room sofa to sleep. Because the flashlight battery had worn out, Kim lit candles for illumination and mounted them in sconces above the sofa. She then went outside again.

Ten or fifteen minutes later, Kim saw smoke and flames coming from the apartment, so intense that she could not get into the apartment. She went to another apartment and called the fire department, which responded rapidly but too late to save the two children, who died of smoke inhalation. The Halfacres arrived home separately within an hour to find out about the tragedy.

## B.

Appellant's claim against the District was based on the District's asserted negligence in the installation of the smoke detector in the Halfacre apartment, in the nonfunctioning of the manually-operated building fire alarm (the fuses had been removed), and in a failure to have a fire extinguisher in the hallway. If the smoke detector had been wired into the electrical system for the entire building, rather than just to that of the Halfacre apartment, the electrical cut-off would not have affected it.[5]

The District denied negligence, but asserted that, if it was negligent, any such negligence was not a proximate cause of the deaths, because the parents' negligence constituted a superseding cause. After a trial of ten days in court, the jury returned a verdict for the District. This appeal followed.

## II. SUPERSEDING CAUSE

 It is "fundamental in tort law" that in a negligence action, in addition to establishing that a defendant owed a duty

---

**4.** *The government argued that there was substantial basis to doubt all the testimony from Mrs. Halfacre about her activities on the day of the fire. Inter alia, the government impeached her testimony through a witness, Tony Lewis, who testified that Kylisha appeared at his aunt's door requesting matches for her mother at the time when Mrs. Halfacre testified that Kylisha and Charles Jr. were with Mrs. Lewis. Appellant on appeal asserts on hearsay grounds that the trial court erred in admitting this testimony.*

*We find no error, since the testimony was not offered to prove the truth of the matter asserted, but rather to impeach Mrs. Halfacre's story as to the events of the day. See Jenkins v. United States, 415 A.2d 545, 547 (D.C.1980); Fed. R.Evid. 801(c).*

**5.** Conflicting evidence was presented at trial whether a requirement existed that smoke detectors be centrally wired.

to the plaintiff and was negligent with respect to that duty, a plaintiff must show that the defendant's negligence was the proximate cause of the harm for which damages are sought. *Williams v. Baker*, 572 A.2d 1062, 1064 (D.C.1990) (en banc). Where two tortfeasors are involved, the unforeseeable action of the subsequent tortfeasor may be a "superseding cause" which breaks the chain of causation. *Dalo v. Kivitz*, 596 A.2d 35 (D.C.1991); *McKethean v. WMATA*, 588 A.2d 708, 716 n. 9 (D.C.1991). While it is true that the contributory negligence of a parent may not normally be imputed to a minor, *McGettigan v. National Bank of Washington*, 115 U.S.App.D.C. 384, 320 F.2d 703 (1963),[6] it is nonetheless possible for a parent's intervening negligence to be the proximate cause of a child's injury. *See Caroline v. Reicher*, 269 Md. 125, 304 A.2d 831 (1973).

Here, the trial court instructed the jury on the issue as follows:

> In this case, the defendant, ladies and gentlemen, has asserted that if it was guilty of negligence, that negligence was not a proximate cause of the plaintiffs' injuries and deaths. But instead, any negligence on its part was superseded by the intervening negligence of Mrs. Halfacre or Mr. Halfacre, Mr. Charles Halfacre, Senior, or both, which was the sole proximate cause of the fire and the plaintiffs' injuries and death in this case. If, however, the danger of this intervening negligent act should have been reasonably anticipated and protected against, the defendant is responsible and liable

for damages which result despite the entry of another act in the chain of causation. If, however, you find that the intervening act could not have been reasonably anticipated by the defendant, the defendant is not responsible for the fire or liable for the damages and deaths arising therefrom.

Plaintiff on appeal faults the trial court for its failure to give the superseding cause instruction in the exact form requested by plaintiff. However, on the critical question of when a superseding cause may be found, the proposed instruction provided: "The negligent act of a third party will operate as a superseding cause of the plaintiff's injury only where the landlord should not have anticipated that the third person would so act." This wording is substantially similar to that given by the trial court in the final sentence of the charge quoted above. *See Psychiatric Institute of Washington v. Allen*, 509 A.2d 619, 625 (D.C.1986) (broad discretion of trial court in fashioning appropriate jury instructions; need not grant request for a particular instruction if it grants request "in substance"). Furthermore, the appellate record does not indicate that plaintiff made any specific objection to the instruction as given. SUPER.CT.CIV.R. 51; *District of Columbia v. Mitchell*, 533 A.2d 629, 636–37 (D.C.1987).[7]

The plaintiff here moved for a directed verdict on the issue of superseding cause, arguing lack of any evidentiary support for such a finding, and, following the verdict for the defendant, for a judgment notwith-

---

**6.** At the point during the trial when the District began to present its intervening cause theory, the court informed the jury, at appellant's counsel's request, that "any negligent conduct that a parent may be guilty of, a mother or a father may be guilty of, may not be and cannot be imputed in any way whatsoever to a child." Although this precise statement was not repeated in the final instructions, it was appellant's obligation to object to this oversight. SUPER.CT.CIV.R. 51.

**7.** For a recent discussion of the doctrine of superseding cause, see *McKethean v. WMATA, supra*, 588 A.2d at 716 (intervening negligent act breaks the chain of causation if it is not "reason-

ably foreseeable" or sequence of events is "highly extraordinary in retrospect,") citing, *inter alia, Lacy v. District of Columbia*, 424 A.2d 317 (D.C.1980).

Appellant's argument that the trial court erred in failing to give a requested instruction that plaintiff had elected among tortfeasors to pursue the District for the children's deaths must fail, since the instruction as worded would in effect have precluded the jury from considering the negligence of the parents as a superseding cause. The trial court did instruct the jury that it is no defense that a person not joined as a defendant participated in causing the injury and that where two persons are proximate causes of the injury, each person is liable.

standing the verdict based on the same argument.[8]

"It is well-settled that proximate cause (like negligence) is ordinarily a question for the jury. It is only in cases where it is clear that reasonable [people] could draw but one conclusion from the facts alleged that negligence and proximate cause become questions of law. These cases have been said to be 'exceptional.'" *Hill v. McDonald*, 442 A.2d 133, 137 (D.C.1982) (citations omitted). Further, a motion for directed verdict, as with a motion for a JNOV,[9] "should be granted only in 'extreme' cases, in which no reasonable person, viewing the evidence in the light most favorable to the prevailing party, could reach a verdict in favor of that party. [It] is appropriate to remove from jury consideration those cases in which the facts ... permit but one reasonable conclusion as to the proper judgment. However, where the evidence is such that reasonable persons could differ the issue is properly put before the jury. In reviewing the denial of a motion for judgment notwithstanding the verdict, this court must view the evidence and all reasonable inferences in the light most favorable to the party who obtained the jury verdict and should reverse only if no juror could reasonably reach a verdict for the opponent of the motion." *Mike Palm, Inc. v. Interdonato*, 547 A.2d 1016, 1019 (D.C.1988) (numerous citations omitted). *See also, e.g., Jackson v. Condor Management Group, Inc., supra* note 9, 587 A.2d at 224.

Applying this standard to the evidence presented here in the light of the instruction given to the jury, we can find no error in the trial court's denial of the motions following this hard-fought and lengthy trial. *Inter alia*, the children were left in an apartment without lights and with only an inadequate flashlight, forcing resort to candles for illumination; no effort was made to deal with the electrical cut-off; the deceased tiny children were entrusted to the care of an ailing young sibling; the adult neighbor was not informed of the full situation; the parents made no efforts to check on the home situation over a period of many hours; no strong reason required them to leave their children in such circumstances. It was for the jury, not the trial court or an appellate court, to weigh the issue whether the parents' conduct here exceeded that which could be reasonably anticipated.[10] Plaintiff had no right to a directed verdict on the issue. The jury has spoken, and we, like the litigants, are here bound by its voice.

*Affirmed.*

---

**8.** Strictly speaking, the issue of superseding cause was only a part of the matters to be determined in disposing of a motion for directed verdict and JNOV. The District contested whether it had been negligent at all. Plaintiff moved for a directed verdict on this issue as well, which was denied.

**9.** The standard for determining whether such motions should be granted is identical in either case. *Jackson v. Condor Management Group, Inc.* 587 A.2d 222, 223 n. 2 (D.C.1991).

**10.** The jury could fairly reject appellant's argument that because the parents assertedly had no notice that the disruption of electrical service would disarm the smoke detector in the apartment, their conduct could not be a superseding cause of the deaths. Although it might well be foreseeable to District officials that parents such as the Halfacres might not have that knowledge, the jury was not obliged to agree that assumptions about the operability of smoke detectors justified the parents' multiple acts of negligence.