**Jeffrey D. CARTER, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 91–CM–848.**

District of Columbia Court of Appeals.

Argued Sept. 4, 1992.
Decided Oct. 16, 1992.

C. Edward Shacklee, Arlington, Va., appointed by the court, for appellant.

Peter H. White, Asst. U.S. Atty., Washington, D.C., for appellee. Jay B. Stephens, U.S. Atty., and John R. Fisher, Thomas C. Black, Ralph J. Caccia, and William J. Sullivan, Jr., Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before TERRY, SCHWELB and KING, Associate Judges.

TERRY, Associate Judge:

After a non-jury trial, appellant was convicted of possession of drug paraphernalia, in violation of D.C.Code § 33–603(a) (1988). On appeal he contends that the evidence was insufficient to sustain his conviction and that the trial court erred in admitting certain hearsay testimony. The sufficiency argument is without merit. As to the hearsay, we agree that the court erred in admitting it but conclude that the error was harmless. Accordingly, we affirm the conviction.

## I

Early one January evening, Officers Johnson and Singleton of the Capitol Police, responding to a radio run, found a 1970 Ford Pinto illegally parked on the sidewalk on First Street, S.W., at the foot of Capitol Hill. Appellant, the only occupant of the car, was sitting in the driver's seat. When Officer Johnson approached the car, he found the window on the driver's side rolled down and noticed an odor of alcohol coming from the open window.[1] Johnson ran a WALES check[2] on appellant's driver's license and found that it had been suspended in the District of Columbia. The officers then asked appellant to get out of the car, and when he did so, he was "very unstable," and his speech was slurred. After he failed a sobriety test, the officers arrested him for driving on a suspended license and driving under the influence of alcohol.[3]

Officer Singleton then began to search the automobile, the left front door of which was still standing open. When he looked at that door, next to where appellant had been seated, Singleton saw a large opening where a speaker would normally be placed. Inside that opening he found two syringes and two aluminum bottle-top cookers. A crime scene search officer arrived a moment later. He conducted a more thorough search of the car and found in the front ashtray an empty plastic ziplock bag containing a white residue. A field test on that residue yielded a positive result for heroin.[4]

Appellant testified that he had been only a rear-seat passenger in the car, not its driver. He had ridden from Fredericksburg, Virginia, to the District of Columbia

---

1. Appellant moved to suppress a statement he made to the officers that he had "had a few drinks." The trial court, after a hearing, granted the motion.

2. WALES, an acronym for Washington Area Law Enforcement System, is a computerized information network linking police departments and other law enforcement agencies throughout the Washington metropolitan area.

3. These charges were apparently dropped when the case was brought to court the next morning.

4. The officer also found one partially used package of cigarette rolling paper on the ground outside the car, a razor blade lying on the front seat, and a medicine bottle wrapped in black electric tape inside the glove compartment. The syringes, cookers, and paper were the paraphernalia named in the information. The government did not introduce the package of rolling paper into evidence, however, because of what the prosecutor characterized as a "chain of custody problem," and the razor blade and medicine bottle were mentioned in testimony but not offered in evidence.

with two other men, Charles Tuttle and someone he knew only as "Bill," who he said was the owner of the car. They were on their way to pick up appellant's wife at her place of employment when a traffic mishap caused the car to hit the curb, resulting in a flat tire. Tuttle and Bill said they knew someone who worked at a nearby "towing yard," so they left appellant in the car so that it would not be towed away while they went to get a replacement tire. While he waited in the car for them, the police came and arrested him. Appellant said that he never heard from either Tuttle or Bill again, even though Tuttle was a longtime friend, and that he never saw or used the drug paraphernalia which the police found in the car.

The defense then called Officer Johnson back to the stand and asked whether he had run a WALES check to find out who owned the car. Johnson replied that appellant "claimed it was his girl friend's car." Defense counsel complained that the answer was not responsive, and the officer replied that he learned the car had just been bought and "was in the process of being transferred from somebody." He said he then asked appellant about it, "and he said it was his girl friend's [car]." After a little more discussion, defense counsel said he had no further questions. The court then asked the witness, "But he said it was his girl friend's car?" Officer Johnson responded:

> Yeah, that's what he claimed. Because I got ... a call from her while he was at the station, claiming that that was her car and she just bought it, and he took it. And she was worried about her car that she just bought.

> THE COURT: Did she give you her name as his wife?

> THE WITNESS: Yes, she claimed—it's his wife or his girl friend. But she called me at the station.... And she wanted to know where her car was. She wanted to know how she could get it back. And

we towed it down to 1–D [the First District police station].

Defense counsel objected "to all that information as being hearsay," but the court overruled the objection, stating that the evidence was "relevant to what your client has been saying on the stand." Later the court added that the challenged evidence "goes to his credibility about whose car it was."

## II

■ The government's evidence showed that appellant was seated in the driver's seat of a car, and that drug paraphernalia were found by the police in an aperture in the car door only inches away from where he sat. Elsewhere in the car, the police found a small plastic bag containing traces of heroin, as well as a razor blade and a small medicine bottle wrapped in black tape.[5] Appellant's defense was, in essence, that he did not know the paraphernalia were there. He said he had ridden as a passenger in the back seat until his companions left him to obtain a replacement for a flat tire, and that he never saw the syringes and cookers until Officer Singleton removed them from the hole in the door. Viewing this evidence in the light most favorable to the government, as we must,[6] we readily conclude that it was sufficient to prove that appellant possessed the syringes and the cookers which he was charged with possessing. *See Parker v. United States,* 601 A.2d 45, 50–52 (D.C. 1991); *Johnson v. United States,* 309 A.2d 497, 499 (D.C.1973), *cert. denied,* 416 U.S. 951, 94 S.Ct. 1960, 40 L.Ed.2d 301 (1974); *Kenhan v. United States,* 263 A.2d 253 (D.C.1970).

## III

■ There can be no doubt that Officer Johnson's testimony about the phone call he received from appellant's "wife or girl

---

5. Because the significance of the razor blade and medicine bottle was never explained, the testimony relating to them was of little or no evidentiary value.

6. *See, e.g., Nelson v. United States,* 601 A.2d 582, 593 (D.C.1991) (citing cases).

friend" was patent hearsay.[7] The trial court apparently allowed it on the ground that it went to appellant's "credibility as to whose car it was"—in other words, because it impeached appellant's testimony that the car belonged to "Bill," whose last name he did not know, and that he was merely a one-time passenger unaware that there were drug paraphernalia in the hole in the front door.[8]

The government argues that the statement of the woman on the phone, as related by Officer Johnson, was not hearsay because it was not offered to prove the truth of the matter asserted.[9] We cannot accept this argument. The only value the statement had as impeachment evidence was in the truth of the matter asserted, *i.e.*, that the declarant was the owner of the car, contrary to appellant's testimony that it belonged to "Bill." If what the woman said was not true, then her statement had no probative value because it could not have impeached appellant's testimony. Thus the impeachment value of the statement depended on its truth, and that fact made it hearsay. Since it did not fall within any of the recognized exceptions to the hearsay rule, it was inadmissible.[10]

We are satisfied nevertheless that the trial court's error was harmless. Appellant's testimony that "Bill" owned the car had already been impeached by his statement to Officer Johnson at the time of his arrest that "it was his girl friend's car." Thus the statement of the woman on the phone was cumulative of evidence that had already been admitted without objection. In these circumstances, and given the powerful evidence that appellant was alone in the car with the contraband only inches away from his left hand, we hold that the admission of the woman's hearsay statement was harmless error. *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). Appellant's conviction is accordingly

*Affirmed.*

---

7. The record does not disclose how appellant's supposed wife or girl friend found out about the car or learned Officer Johnson's name and phone number.

8. Appellant also testified that he did not have a car and that his wife therefore had to travel to and from work on the bus. He had arranged to pick her up on this particular evening because she had some "engagements" after work.

9. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Although the Federal Rules of Evidence do not apply in the Superior Court or this court, *see In re D.M.C.*, 503 A.2d 1280, 1283 n. 5 (D.C. 1986), the definition of hearsay in Rule 801(c) is consistent with well-settled law in the District of Columbia and elsewhere. *See, e.g., Jenkins v. United States*, 415 A.2d 545, 547 (D.C.1980); *Morris v. United States*, 389 A.2d 1346, 1349–1350 (D.C.1978). From this definition it logically follows that if a statement is not offered to prove the truth of the matter asserted, it is not hearsay. *See Chavarria v. United States*, 505

A.2d 59, 62 (D.C.1986); *United States v. Wright*, 251 U.S.App.D.C. 276, 283, 783 F.2d 1091, 1098 (1986).

10. *Grant v. District of Columbia*, 597 A.2d 366 (D.C.1991), on which the government relies, does not support its argument. *Grant* involved a fire in an apartment which killed two children, one of whom was a five-year-old girl. The evidence showed that the electricity had been turned off for non-payment, and that the residents of the apartment were using flashlights and candles for illumination. The little girl's mother testified that the children were with a friend, Dorothy Lewis, at a certain time, but another witness, Tony Lewis, said that the girl "appeared at his aunt's door requesting matches for her mother at the time when [the mother] testified that [the children] were with Mrs. Lewis." We held that the testimony of Tony Lewis was properly admitted because it was not offered to prove the truth of the matter asserted (namely, that the little girl's mother needed matches), "but rather to impeach [the mother's] story as to the events of the day." *Id.* at 368 n. 4 (citations omitted).