**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHN K. TALKINGTON, as Conservator
for Felisha Sue Moore, a minor and
as Personal Representative
(Administrator) of the Estates of
Ashley Renae Moore, John Curtis
Moore, and Elizabeth Nicole
Moore; PAMELA QUIGLEY, Personal
Representative for Eugene Allen
Moore and Sueanne Elizabeth
Moore,
Plaintiffs-Appellees,

v.

ATRIA RECLAMELUCIFERS FABRIEKEN

BV (CRICKET BV); CRICKET SA;
POPPELL BV,
Defendants-Appellants,

No. 97-1386

and

TARKETT NORTH AMERICA HOLDING
INCORPORATED, formerly known as
Stora Holding Incorporated and as
Swedish Match Holding
Incorporated,
Defendant.

SOUTH CAROLINA DEPARTMENT OF
SOCIAL SERVICES,
Movant.

Appeal from the United States District Court
for the District of South Carolina, at Anderson.
G. Ross Anderson, Jr., and Henry M. Herlong, Jr.,
District Judges.
(CA-95-3148-8-20, CA-95-3150-8-20, CA-95-3151-8-20,
CA-95-3152-8-20, CA-95-3193-8-20)

Argued: May 7, 1998

Decided: July 15, 1998

Before WILKINSON, Chief Judge, WILLIAMS, Circuit Judge, and
FRIEDMAN, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Williams wrote the opinion, in
which Chief Judge Wilkinson and Judge Friedman joined.

_____

## COUNSEL

**ARGUED:** Colleen Ann Scherkenbach, QUARLES & BRADY,
Phoenix, Arizona; Frank J. Daily, QUARLES & BRADY, Milwau-
kee, Wisconsin, for Appellants. James Marion Thompson, THOMP-
SON & SMITH, Augusta, Georgia, for Appellees. **ON BRIEF:** C.
Christine Burns, QUARLES & BRADY, Phoenix, Arizona; Edward
H. Starr, Jr., MAYS & VALENTINE, Richmond, Virginia, for Appel-
lants. Chad A. McGowan, Atlanta, Georgia; J. David Standeffer,
STANDEFFER & BRISLANE, Anderson, South Carolina; Danny L.
Durham, FLEMING, BLANCHARD, JACKSON & DURHAM,
Augusta, Georgia, for Appellees.

_____

## OPINION

WILLIAMS, Circuit Judge:

In this diversity action, we follow the South Carolina appellate
courts' consistent holdings that the doctrines of strict liability and
negligence are distinct theories of recovery in a products liability
case, and that the denial of liability under one of these doctrines does
not automatically preclude the imposition of liability under the other.
Therefore, we affirm the district court as to all issues of liability.

2

I.

This appeal arises out of a tragic residential fire in Anderson, South Carolina. On the morning of November 7, 1992, five people, including two-year-old John Moore, three-year-old Ashley Moore, and six-year-old Nikki Moore; their mother Sueanne Brock; and the paternal grandfather of some of the children, Allen Moore, were killed, and five year-old Felisha Moore was permanently disabled, when their rental house was destroyed by fire. Plaintiffs' experts opined that the fire began when one of the infant children, Ashley Moore, ignited the sofa in the den with a Cricket disposable butane cigarette lighter that had no child-resistant safety features. Plaintiffs [1] premised their damages claims against Atria Reclamelucifers Fabrieken BV, Cricket SA, and Poppell BV (collectively, "Cricket") on the theories of both strict liability and negligence. Plaintiffs claimed that Cricket's failure to include safety features on the lighter rendered it defective and unreasonably dangerous. Plaintiffs also claimed that Cricket breached the duty of care owed them when it manufactured and sold the lighter absent safety features despite knowledge that damage could be caused by young children operating the lighter.

At the conclusion of the liability phase of the bifurcated trial, the jury expressly rejected Plaintiffs' theory that the absence of a child resistant safety feature was a design defect resulting in strict liability. The jury did find, however, that Cricket negligently designed the lighter and that this negligent design was the proximate cause of the deadly fire, thus rendering Cricket liable for damages. In addition to determining liability, the jury was asked to apportion the fault between each of the adult plaintiffs and Cricket on separate verdict forms. On Sueanne Brock's verdict form, the jury determined that Cricket was twenty percent at fault while Brock was eighty percent

_____

[1] John K. Talkington is the personal representative of the estates of Ashley Moore, John Moore, and Nikki Moore and the conservator for Felisha Moore, the only survivor of the fire. Pamela Quigley is the personal representative of the estates of Allen Moore and Sueanne Brock. "Plaintiffs" refers to the plaintiffs collectively. We note that this case began with the filing of five separate complaints. Cricket subsequently filed a motion, opposed by Plaintiffs, to consolidate the cases for trial. The district court granted the motion.

at fault. The jury computed the same ratio as to Allen Moore. As a result, the adult plaintiffs' claims were extinguished.**2** At the conclusion of the damages phase, Cricket made various motions, including a renewal of its motion for judgment as a matter of law. The district court denied all of Cricket's motions.

Because the parties had stipulated that any negligence found on behalf of the adult plaintiffs would not be imputed to the child plaintiffs, the damages phase of the trial continued for the child plaintiffs' claims. The jury awarded each of the three deceased child plaintiffs' estates $1000 in actual damages and awarded Felisha Moore, the only survivor, actual damages in the amount of $2.6 million. At the conclusion of the damages phase, Cricket again renewed its motion for judgment as a matter of law or, in the alternative, a new trial. The child plaintiffs also sought a new trial on damages only, arguing that the award of damages was unreasonably low. The district court denied all motions and imposed a $2,603,000 judgment against Cricket. Cricket now appeals the liability verdicts.**3**

_____

**2** In Nelson v. Concrete Supply Co., 399 S.E.2d 783 (S.C. 1991), the South Carolina Supreme Court overturned nearly 150 years of jurisprudence, see Freer v. Cameron, 37 S.C.L. (4 Rich.) 228 (1851), when it expressly rejected the doctrine of contributory negligence and joined the vast majority of its sister jurisdictions in adopting the more equitable doctrine of comparative negligence in assessing damages in tort actions. See Nelson, 399 S.E.2d at 784. Specifically, the court adopted the "not-greater-than" modified version of comparative negligence. See id. (citing Langley v. Boyter, 325 S.E.2d 550 (S.C. Ct. App. 1984)). Under comparative negligence, even if the jury concludes that the plaintiff was partly at fault for her damages, the plaintiff may still recover. This doctrine has been modified in South Carolina, however, such that the plaintiff's recovery is reduced by the percentage of fault proportioned to the plaintiff, as long as the plaintiff's fault is "not greater than" that of the defendant. See Nelson, 399 S.E.2d at 784. Accordingly, if a jury finds that a plaintiff is more than fifty percent at fault, as was the case here, the plaintiff recovers nothing. See id.

**3** Talkington, as conservator for Felisha Moore, cross-appeals Felisha's damages verdict. By separate order, the damages issues raised in Talkington's cross-appeal are certified to the South Carolina Supreme Court pursuant to Rule 228 of the South Carolina Appellate Court Rules. See Talkington v. Atria Reclamelucifers Fabrieken BV, No. 97-1424 (4th Cir. argued May 7, 1998). We reserve imposition of judgment on the cross-appeal pending receipt of the state court's response to the questions presented.

II.

Construing the evidence in the light most favorable to Plaintiffs, see Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 597 (4th Cir. 1996), the facts of this case are as follows. At approximately 8:45 a.m. on November 7, 1992, Sueanne Brock's neighbors, Roy and Billie Lee Crawford, saw Brock's house engulfed in flames. The couple immediately ran across the street and tried to help. Mr. Crawford began knocking out the windows with a hammer to get into the house. Suddenly, Allen Moore, enveloped in flames, jumped through the front window and onto the front porch. As Mr. Crawford dragged him to the ground to extinguish the fire, Allen said, "I know who done it." Unfortunately, Allen died shortly thereafter. Emergency personnel responded immediately and began putting out the fire. A search of the home revealed Brock and three of the children in the front bedroom. They all died as a result of smoke inhalation associated with the fire. Five-year-old Felisha, the only survivor, initially was treated at the Anderson Memorial Hospital but, due to the seriousness of her injuries, she was airlifted to the Burn Unit at the Humana Hospital in Augusta, Georgia, that same day.[4]

After the fire was extinguished, various fire and law enforcement personnel attempted to reconstruct the scene. Anderson County Arson Investigator Arthur Sullivan led the investigation. Various photographs were taken and a videotape was made of the scene. During a walk-around of the building, Sullivan discovered a gallon jug outside the house that smelled of kerosene and noted that an outdoor shed contained evidence of previous fires. Sullivan's notes indicated that the family used two kerosene heaters for warmth, and he later learned

_____

[4] Felisha remained comatose in the Burn Unit for five weeks while she underwent aggressive care. In mid-December, Felisha was transferred to Greenville Memorial Hospital in Greenville, South Carolina, where she received care until April of 1993, at which time she was placed in a nearby rehabilitation facility. After two months, she was transported back to Greenville Memorial Hospital. At that time Felisha continued to use a gastronomy tube for partial feeding, and although she could follow simple commands, her verbal responses were very limited and her movements poor. The following month, Felisha was released to the care of her foster parents, Roger and Carol Dean.

that Brock's eldest son, Michael Brock, had started a fire in the back shed prior to this incident. Sullivan did not test the house for the presence of accelerants. Anderson City Chief Fire Investigator Charles Mull also participated in the investigation. He discovered a cigarette lighter on the living room floor, a few feet from the couch and a few feet from where three-year-old Ashley Moore's body was found. Mull notified Sullivan of his discovery, and Sullivan took the lighter into evidence. Both Brock and Allen Moore were smokers.

Due to the number of casualties and the evidence suggesting that the fire may have been intentionally set, the Anderson authorities contacted the South Carolina Law Enforcement Division (SLED). SLED Agent Ross learned that Billy Ray Moore, Brock's boyfriend and the father of her two-year-old son John Moore, had threatened her life the night before the fire. The couple had gotten into a drunken fight at a party earlier in the evening. At approximately 3:00 a.m. on the morning of the fire, Billy Ray was seen slashing Brock's tires outside the home. Then, between 5:00 and 6:00 a.m., Billy Ray was seen in the home arguing with Brock. Agent Ross discovered accelerant on Allen Moore's clothes and subsequent reports suggested that Billy Ray's clothes smelled of kerosene. Later testing, however, failed to reveal any kerosene on Billy Ray's clothes. At the conclusion of his investigation, Agent Ross ultimately agreed with the Anderson County authorities and concluded that the fire was accidental, rather than arson.

III.

Cricket raises four issues on appeal. First, it contends that the district court erroneously failed to grant Cricket judgment as a matter of law after the jury returned a verdict in which it found that the Cricket lighter was not "defective and unreasonably dangerous," thereby barring the imposition of strict liability upon Cricket under South Carolina's products liability law as well as under negligence law. Second, Cricket asserts that the district court should have granted it judgment as a matter of law because Plaintiffs failed to prove that a child's use of the lighter was the proximate cause of the fire. Third, Cricket contends that the district court abused its discretion when it failed to submit a separate special interrogatory on superseding and intervening causes to the jury. And finally, Cricket asserts that the three special

6

verdict forms erroneously prevented the jury from apportioning the degree of fault among all three tortfeasors -- Cricket, Brock, and Allen Moore.

We review de novo the district court's refusal to grant judgment as a matter of law. See Benesh v. Amphenol Corp. , 52 F.3d 499, 502 (4th Cir. 1995). A court may only grant a motion for judgment as a matter of law if, viewing the evidence in the light most favorable to the non-moving party and drawing every legitimate inference in that party's favor, the court "determine[s] that the only conclusion a reasonable trier of fact could draw from the evidence is in favor of the moving party." Tools USA & Equip. Co. v. Champ Frame Straightening Equip. Inc., 87 F.3d 654, 656-57 (4th Cir. 1996) (alteration in original). The district court's evidentiary rulings are reviewed for abuse of discretion. See Sasaki v. Class, 92 F.3d 232, 241 (4th Cir. 1996).

This case is before us pursuant to diversity jurisdiction, see 28 U.S.C.A. § 1332 (West 1993), and thus we are bound to apply governing state law, as interpreted by the relevant state's highest court, see Erie R.R. Co. v. Thompkins, 304 U.S. 64, 78 (1938). If the law is not entirely clear, we must rule as it appears the state court would rule. See St. Paul Fire & Marine Ins. Co. v. Jacobson, 48 F.3d 778, 783 (4th Cir. 1995). In trying to determine how the highest state court would interpret the law, we "should not create or expand that State's public policy." Id. The parties agree that South Carolina law applies to these claims. For the reasons discussed below, we reject Cricket's claims and affirm the judgment of the district court on all issues of liability.

A.

Cricket contends that it should have been granted judgment as a matter of law because the jury expressly found that the Cricket lighter was not defective and unreasonably dangerous. As a result, Cricket argues that it could not be negligent for manufacturing the lighter in accordance with its design and, therefore, the jury's verdict is fatally inconsistent. Plaintiffs maintain, however, that the jury's verdict is not inconsistent, and that Cricket's argument is based upon a misapprehension of the fundamental differences between strict liability and negligence. Strict liability, Plaintiffs contend, is determined by refer-

7

ence to the expectation of the ordinary consumer. Negligence, how-
ever, may be based upon the reasonable foreseeability of harm to
unintended users, in this case, children.

At the conclusion of the damages phase of the trial, the jury
returned the following marked verdict form:

> 2. Do you find by a preponderance of the evidence that the
> defendants . . . were negligent in the design of the
> lighter and that this negligence was a proximate cause
> of the accident?
> _x_ Yes ___ No
>
> 3. Do you find by a preponderance of the evidence that the
> Cricket lighter was defective and unreasonably danger-
> ous and that this defect was a proximate cause of the
> accident?
> ___ Yes _x_ No

(J.A. at 176.) Cricket claims that these answers are fatally inconsis-
tent. If the product is not defective, Cricket argues, then manufactur-
ing it consistent with its design cannot constitute negligence.

We first note that the proper remedy for an inconsistent jury verdict
is a new trial, not judgment as a matter of law as Cricket suggests.
See Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc., 99
F.3d 587, 598 (4th Cir. 1996). We need not concern ourselves with
this dilemma, however, because where, as here, there is a view of the
case that makes the jury's answers to special interrogatories consis-
tent, a reviewing court must resolve them that way. See Atlantic &
Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364
(1962); see also Atlas Food Sys., 99 F.3d at 599 (4th Cir. 1996) (hold-
ing that appellate courts must "harmonize seemingly inconsistent ver-
dicts if there is any reasonable way to do so").

The South Carolina appellate courts consistently have acknowl-
edged that a products liability claim may be brought under several
theories, including strict liability, breach of warranty, and negligence.
See Cousar v. New London Engineering Co., 410 S.E.2d 243, 243-44

8

(S.C. 1991); Small v. Pioneer Machinery, Inc. , 494 S.E.2d 835, 842 (S.C. Ct. App. 1997); Bragg v. Hi-Ranger, Inc. , 462 S.E.2d 321, 325 (S.C. Ct. App. 1995); Dema v. Shore Enterprises, Ltd., 435 S.E.2d 875, 876 (S.C. Ct. App. 1993); Sunvillas Homeowners Ass'n, Inc. v. Square D Co., 391 S.E.2d 868, 871 (S.C. Ct. App. 1990). Cricket does not dispute this general proposition. Cricket further agrees that under certain circumstances "a jury could legitimately find negligence but no strict liability." (Appellant's Br. at 24.) According to Cricket, however, this anomaly "applies only when an alternative to design defect, such as failure to warn, exists as a theory of negligence." (Id.)

Our review of South Carolina case law reveals nothing to support this proposition. To the contrary, the South Carolina Court of Appeals recently rejected an argument by a manufacturer in a products liability case virtually identical to the one espoused here by Cricket. In Bragg v. Hi-Ranger, Inc., 462 S.E.2d 321 (S.C. Ct. App. 1995), the state appellate court held that a directed verdict on the strict liability claim was not logically inconsistent with allowing the negligence claim to be submitted to the jury. See id. at 327. The court reasoned:

> Although substantial similarities in analysis exist between strict liability for the sale of defective products and negligence principles of liability, especially in design and inadequate warning cases, differences do exist. . . . Strict liability and negligence are not mutually exclusive theories of recovery; that is, an injury may give rise to claims that can be established either under principles of strict liability or negligence, and failure to prove one theory does not preclude proving the other.

Id. at 325-26 (emphasis added); cf. Gasque v. Heublein, Inc., 315 S.E.2d 556, 558 (S.C. Ct. App. 1984) (rejecting argument that negligence and strict liability are so closely intertwined that it should depart from "two issue rule" in products liability cases and concluding that there are "obvious differences between the two theories, i.e., the different quantum of proof required and the fact that one's origins are statutory while the others are at common law"). In Bragg, the court further elaborated that:

> The distinction between strict liability and negligence in design-defect and failure-to-warn cases is that in strict liabil-

9

> ity, knowledge of the condition of the product and the risks involved in that condition will be imputed to the manufacturer, whereas in negligence these elements must be proven.
>
> Whether strict liability or negligence affords a plaintiff the broader theory of recovery will depend largely on the scope of evidence admitted by the trial court and on the jury instructions given under each theory.

Bragg, 462 S.E.2d at 326 (quoting Bilotta v. Kelley Co., 346 N.W.2d 616, 622 (Minn. 1984)).

In formulating its conclusion that differences may exist between the theories of negligence and strict liability in defect cases, the Bragg court cited with approval the Third Circuit's decision in Griggs v. BIC Corp., 981 F.2d 1429 (3rd Cir. 1992). The facts in Griggs are remarkably similar to those in this case. In Griggs, an eleven-month-old child suffered serious injuries in a fire at his Pennsylvania home started by his three-year-old stepbrother with a disposable butane cigarette lighter. The plaintiffs brought suit against BIC, "alleging that BIC's failure to manufacture a childproof lighter constituted both defective and negligent design." Griggs, 981 F.2d at 1431. The district court granted BIC summary judgment on plaintiff's strict liability and negligence claims. On appeal, the Third Circuit affirmed summary judgment based upon strict liability, but reversed as to negligence. Interpreting Pennsylvania law, the Third Circuit held that while a product may not be defective because it failed to perform in the manner for which it was intended, it could be found defective because it did not contain protective mechanisms to guard against harm caused by foreseeable misuses. See id. at 1438.

Like Cricket, the defendant in Griggs, the cigarette lighter manufacturer BIC, argued that when a plaintiff fails to meet the lower burden for strict liability, she necessarily cannot meet the higher burden for negligence in a design-defect case. The Third Circuit rejected this reasoning. It held:

> Viewing the negligence claim as merely one step beyond strict liability, however, obscures the true difference between negligence and strict liability under Pennsylvania

10

law. In strict liability, the focus is on a defect in the product, regardless of fault, and that defect is determined in relation to a particular subset of the general population: the intended user who puts the product to its intended use. In negligence, the focus is on the reasonableness of a defendant's conduct, and this reasonableness is determined in relation to a different subset of the general population, and one that is conceivably broader: anyone who foreseeably may be subject to an unreasonable risk of foreseeable harm.

. . . . In strict liability, the plaintiff need not show fault, but only prove a product defect. A product cannot be defective when its design and performance meet all of the requirements of the intended user, regardless of the foreseeability of misuse by unintended users. In negligence, the plaintiff must prove fault of the manufacturer, which is an element not required in strict liability law. The scope of inquiry, however, expands because of the duty to unintended but foreseeable users. Although the results may very well often be the same in strict liability and negligence under a given set of facts, the focus of each claim is different, and therefore proof of negligence may be possible without a finding of strict liability.

Id. at 1438.

South Carolina, like Pennsylvania, links strict liability with "intended use" while negligence encompasses all "foreseeable" uses. In South Carolina, "to recover under a strict liability theory, the plaintiff must establish that: (1) the defendant's product was in a defective condition unreasonably dangerous for its intended use; (2) the defect existed when the product left the defendant's control; and (3) the defect was the proximate cause of the injury sustained." Bragg, 462 S.E.2d at 328 (emphasis added). In other words, the plaintiff must show that "the product, as designed, is unreasonably dangerous in its failure to conform to the ordinary user's expectations." Id. (emphasis added).

Quite a different standard applies to negligence claims. To make out a negligence claim in South Carolina, a plaintiff must prove three

11

elements: "(1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty." Rickborn v. Liberty Life Ins. Co., 468 S.E.2d 292, 298 (S.C. 1996). "A breach of duty exists when it is foreseeable that one's conduct may likely injure the person to whom the duty is owed." Horne v. Beason, 331 S.E.2d 342, 344 (S.C. 1985) (emphasis added); see also Vinson v. Hartley, 477 S.E.2d 715, 720 (S.C. Ct. App. 1996).

In most design-defect cases, the proof under the two theories will dovetail, or as is more often the case, strict liability will be easier to prove because there is no required finding of fault. Recovery under the principles of strict liability is limited, however. While the plaintiff is relieved from proving fault by the manufacturer,"the manufacturer is not held as an insurer against all losses caused by the product but rather is to be held responsible only for damages attributable to some failure of the product to perform with reasonable safety in its normal environment." Bragg, 462 S.E.2d at 327 (emphasis added). As a result, strict liability is not available to those plaintiffs who are injured when a product is used in a way not intended by the manufacturer. Recovery under the theory of negligence, however, is available to any plaintiff who can establish that she falls into the category of individuals to whom the manufacturer owes a duty -- foreseeable, although perhaps unintended users -- and that the manufacturer breached that duty by failing to exercise due care.

As the Bragg court noted, "[w]hether strict liability or negligence affords a plaintiff the broader theory of recovery will depend largely on the scope of evidence admitted by the trial court and on the jury instructions given under each theory."[5] Bragg, 462 S.E.2d at 326. In describing the elements of negligence, the district court charged the jury that "[t]he duty to exercise reasonable care exists when it is foreseeable that one's conduct may likely injure a person to whom the duty is owed. . . . All persons owe each other the duty to use reasonable care." (J.A. at 781.) The district court further indicated that "the plaintiffs allege that the defendants breached their duty of care by failing to manufacture a lighter with a sufficient child-resistant fea-

_____

[5] In this case, Cricket does not challenge the district court's instructions to the jury regarding the elements of strict liability and negligence.

12

ture. When children are involved, as in this case, you should take notice of the fact that more care must be exercised towards children than towards persons of mature years." (J.A. at 781.) And finally, with respect to proximate cause, the district court stated that Cricket could be held liable only for events that were "the natural and probable consequences of the act or omissions alleged." (J.A. at 782.) On the other hand, the district court charged the jury that to find Cricket liable under the doctrine of strict liability, Plaintiffs had to show that the product was "in a defective condition, unreasonably dangerous to the user or consumer." (J.A. at 788.)

Based upon the foregoing instructions and the facts of this case, the jury concluded that the Cricket lighter was not defective or unreasonably dangerous to the ordinary consumer (an adult) for its intended use (lighting a cigarette) and, therefore, found that Cricket was not strictly liable for Plaintiffs' injuries. Under South Carolina law, it is not inconsistent with this finding for the jury nevertheless to impose liability upon Cricket based upon a finding that Cricket negligently failed to exercise due care towards the vulnerable child plaintiffs when it was reasonably foreseeable that serious harm could result from Cricket's failure to include child-resistant safety features on its lighter. Accordingly, we reject Cricket's claim that it is entitled to judgment as a matter of law, or in the alternative, a new trial, based upon the alleged inconsistency of the jury's verdict.

B.

Cricket next argues that the district court erred when it did not grant judgment as a matter of law because Plaintiffs failed to show by a preponderance of the evidence that three-year-old Ashley's use of a Cricket lighter proximately caused the fire. In a negligence action, a plaintiff must demonstrate that the defendant's breach of duty was the proximate cause of the plaintiff's damage. See Goode v. St. Stephens United Methodist Church, 494 S.E.2d 827, 834 (S.C. Ct. App. 1997). "Proof of proximate cause requires proof of both causation in fact and legal cause. Causation in fact is proved by establishing the injury would not have occurred `but for' the defendant's negligence. Legal cause is proved by establishing foreseeability." Vinson, 477 S.E.2d at 721 (citations omitted). Proximate cause is gen-

13

erally a question of fact to be decided by the jury. See id. It may be proven by direct or circumstantial evidence. See id.

On appeal, Cricket does not contest the jury's finding of legal cause, i.e., that the injuries sustained were reasonably foreseeable.[6] Rather, Cricket asserts that the circumstantial evidence that Ashley's use of the lighter was the cause-in-fact of the fire was logically and legally insufficient. Cricket contends that Plaintiffs' proof of causation in fact depended solely on the expert testimony of Arthur Sullivan, Ted Kaplon, and Dr. Sandra Conradi. Cricket maintains, however, that none of these witnesses was able to state to any degree of probability that Ashley started the fire with a Cricket lighter. Also, Cricket challenges the admissibility of Kaplon's testimony and a videotape of a "burn test" presented by Sullivan."When determining whether the evidence is sufficient to support the jury's verdict, the evidence must be reviewed in the light most favorable to plaintiffs, giving them the benefit of all inferences." Duke v. Uniroyal, Inc., 928 F.2d 1413, 1417 (4th Cir. 1991). We must defer to the judgment of the jury "[i]f, with that evidence, a reasonable jury could return a verdict in favor of plaintiffs." Id. Because we hold that the testimony of Sullivan and Kaplon provided sufficient evidence from which a reasonable jury could conclude that the fire was proximately caused by Ashley using a Cricket lighter, we refuse to disturb the jury's finding of liability.

1.

To establish that Ashley started the fire with a Cricket lighter, Plaintiffs relied primarily upon the testimony of two witnesses: Arthur Sullivan and Ted Kaplon.[7] Absent any objection by Cricket, the district court qualified both Sullivan and Kaplon as experts in the

_____

[6] Cricket also does not contest that it was reasonably foreseeable that unattended children would play with its lighter and that the existence of child safety features would have prevented a child from igniting the lighter.

[7] Plaintiffs also presented the testimony of Dr. Sandra Conradi via deposition. Because we agree with Cricket that Dr. Conradi's testimony did not add significant support to Plaintiffs' theory of negligence, we focus only upon the testimony of Sullivan and Kaplon.

14

area of fire cause and origin. On direct examination, Sullivan opined, without objection, that "[t]he most probable cause of this fire, based on our tests and our witness testimony and putting everything together, most likely this fire was started by placing an open flame to the couch. In this instance, most likely a child." (J.A. at 254.) Sullivan further testified that he had considered the alternative scenarios for the fire's origin proposed by Cricket, but that he had ruled out gas, kerosene heaters, a smoldering cigarette that had been dropped by Allen Moore after he fell asleep on the couch, and arson as likely causes of the fire. Cricket did not object to Sullivan's testimony or, in particular, his final opinion of the fire's cause. Rather, Cricket thoroughly cross-examined Sullivan, questioning his reasoning and the bases for his conclusions and pointing out perceived inconsistencies. During his testimony, Sullivan revealed that he based his conclusion, in part, upon a "burn test" conducted by fire officials in which the effects of a smoldering cigarette and an open flame upon a sofa were compared. The test was videotaped and presented to the jury without objection.

Kaplon, an electrical engineer with 25 years of experience in fire investigation, testified, without objection, that the cause of the fire was "Ashley igniting the sofa with the cigarette lighter." (J.A. at 344.) Upon extensive questioning by both counsel, Kaplon defended his position and gave well-reasoned responses for rejecting Cricket's alternative scenarios, including arson, a malfunctioning kerosene heater, and a dropped smoldering cigarette. We conclude that a jury, after hearing the testimony of these two experts, could reasonably conclude that the fire was caused by Ashley igniting the sofa with a Cricket cigarette lighter.

2.

Cricket asserts, however, that the entirety of Kaplon's testimony and the burn test relied upon by Sullivan, along with his corresponding opinion testimony, should have been excluded under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). We review a district court's evidentiary rulings, including the decision to admit or exclude expert evidence under Daubert, for abuse of discretion. See General Elec. Co. v. Joiner, 118 S. Ct. 512, 515 (1997). Finding

15

no reversible error, we affirm the district court's admission of the challenged testimony.

a.

Turning to Cricket's claim regarding Kaplon's testimony, we hold that Cricket fails to demonstrate that the admission of Kaplon's testimony was error. Cricket's attempt to exclude Kaplon's testimony under Daubert demonstrates a fundamental misunderstanding of the Supreme Court's decision. "Daubert instructs district courts to make a `preliminary assessment of whether the reasoning or methodology' underlying expert testimony `is scientifically valid.'" Freeman v. Case Corp., 118 F.3d 1011, 1016 n.6 (4th Cir. 1997) (quoting Daubert, 509 U.S. at 590 n.8), cert. denied , 118 S. Ct. 739 (1998). Cricket's criticism of Kaplon is not a challenge to his methodology or technique. In fact, Cricket acknowledges that "Kaplon applied no scientific methods in forming his opinion."**8** (Appellant's Br. at 34.) Rather, Kaplon based his conclusions upon his "experience and training" as an electrical engineer with approximately 25 years of experience investigating fires. Accordingly, the Daubert analysis is simply inapplicable to a determination of the admissibility of Kaplon's testimony. See Freeman, 118 F.3d at 1106 n.6. (noting that "where an expert relies on his experience and training and not a particular methodology to reach his conclusions, application of the Daubert analysis is unwarranted" (internal quotation marks, alterations, and citations omitted)).

Therefore, Kaplon need satisfy only the requirements of Rule 702 of the Federal Rules of Evidence for his testimony to be admissible. Rule 702 provides that:

_____

**8** To the extent that Cricket questions Kaplon's reliance upon the reports and the depositions of other witnesses, and his failure to conduct an "independent investigation," we note that the Federal Rules of Evidence "expressly authorize that such expert opinions may be based, not only on data and direct observations, but also on the opinions and observations of others." Westfield Ins. Co. v. Harris, 134 F.3d 608, 612 (4th Cir. 1998).

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed. R. Evid. 702. Kaplon's credentials were unchallenged by Cricket. Further, Kaplon's testimony did assist the jury in resolving the key factual dispute in the case. We also note that Cricket does not challenge the district court's instructions to the jury as to burden of proof or as to how the jury should assess expert testimony. Cf. Freeman, 118 F.3d at 1017. Accordingly, the admission of Kaplon's testimony was not an abuse of discretion.

b.

As to the videotape of the burn test, assuming without deciding that its admission was error, we readily conclude that the evidence did not affect Cricket's substantial rights and, therefore, was harmless. See Fed. R. Evid. 103(a) (An "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."). Accordingly, the admission of the burn test and Sullivan's testimony discussing the test was not reversible error.

The picture is poor in quality and does little, if anything, to support Plaintiffs' theory of the case. Moreover, Sullivan's reliance upon the test in formulating his opinion was very limited; Sullivan based his elimination of Cricket's smoldering cigarette scenario on two much more compelling factors. First, he reasoned that if Cricket's theory that the fire originated from a lit cigarette dropped into the cushions of the couch by Allen Moore when he fell asleep was correct, the burns on Moore's back would have been much less extensive. Second, and more fundamentally, Sullivan opined that Moore would never have been able to get off the couch, but would have died there, if he had been on it from the time that the fire began smoldering. Therefore, we conclude that the burn test was, at most, only cumulative evidence. Based upon the foregoing, we conclude that any error did not affect Cricket's substantial rights. Absent reversible error, we affirm the district court's admission of the challenged evidence.

17

3.

Cricket finally asserts that the weak circumstantial evidence that Ashley started the fire was insufficient "[i]n view of more compelling circumstantial and direct evidence that a smoker, kerosene stove or arsonist caused the fire." (Appellant's Br. at 28-29.) We acknowledge that there is evidence in this case that suggests alternative explanations for the cause of the fire. Plaintiffs' burden of proof does not require him to eliminate every possible cause of the fire, however. Rather, he is merely required to demonstrate that it is reasonably probable that Ashley ignited the lighter, causing the injuries to the plaintiffs. We conclude that Plaintiffs presented sufficient evidence to render it reasonably probable that negligence in the design of the lighter was a proximate cause of the accident. The question of proximate cause, therefore, was properly submitted to the jury.

C.

Next, Cricket contends that the district court abused its discretion when it failed to include an interrogatory on the verdict forms asking whether the adult plaintiffs' negligent supervision of the child plaintiffs was a superseding, intervening act of negligence that relieved Cricket of liability as to the claims of all plaintiffs. Cf. Grant v. District of Columbia, 597 A.2d 366, 369 (D.C. Ct. App. 1991) (holding that while the "contributory negligence of a parent may not normally be imputed to a minor, it is nonetheless possible for a parent's intervening negligence to be the proximate cause of a child's injury" (internal citations omitted)). "The use of special verdicts rests with the discretion of the district court." Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp., 41 F.3d 182, 190 (4th Cir. 1994); see also 9 Moore's Federal Practice § 49.11[2][a], at 49-16 (1997) ("Rule 49 is a rule of discretionary implementation, solely in the control of the trial judge. No party has a right to the use of a special verdict.").

Although the district court did not submit a special interrogatory to the jury regarding superseding, intervening acts, the district court fully informed the jury of the applicable law. The court instructed the jury as follows:

> Now, the defendants also contend as a defense to the negligence cause of action that even if they were negligent,

18

which of course they deny, they contend that the intervening acts or omissions of the adult plaintiffs relieved them of liability. The test of whether the intervening acts or omissions of the adult plaintiffs serve to break the chain of causation is whether the intervening independent acts or omissions were reasonably foreseeable by the defendants, or if not reasonably foreseeable, whether the acts or omissions of the defendants would have caused injury or loss even without the intervening independent act or omissions over which it had no control.

If the intervening cause was foreseeable, then the defendants are not relieved from liability. If the intervening cause was not foreseeable, then the chain of causation has been broken and the defendants are relieved from liability for any wrong which they may have had. Where, however, the concurrent negligence of two or more persons combines to produce injury or loss to a third party, the negligence of the one provides no excuse or defense for the negligence of the other. The liability is not defeated by the mere fact that the negligence of one preceded that of another in point of time.

(J.A. at 785-86.) Cricket does not challenge this instruction on appeal. Rather, Cricket maintains only that an additional interrogatory was necessary to inform the jury that the intervening negligence of the adult plaintiffs could break the causal chain and relieve Cricket from liability as to the claims of all plaintiffs, not just the adults. We disagree.

The jury was charged that if it found that the adult plaintiffs' negligence was not foreseeable, then the causal chain would be broken, and Cricket would be "relieved from liability for any wrong which they may have had." (J.A. at 786) (emphasis added). This is an accurate and adequate instruction on superseding, intervening causes, see Small v. Pioneer Machinery, Inc., 450 S.E.2d 609, 616 (S.C. Ct. App. 1994) (holding that a third party's intervening acts of negligence break the causal chain only if the acts are not foreseeable), and we must assume that the jury heeded it. It is not an abuse of discretion not to require the jury to make express findings on every element and every defense presented. In light of its unchallenged instruction on the

19

applicable law, the district court's decision not to submit an additional interrogatory as to superseding cause to the jury was well within its discretion.

D.

Cricket contends that the district court abused its discretion when it failed to submit a single verdict form to the jury to apportion fault among all three tortfeasors, i.e., Brock, Moore, and Cricket. Cricket points to the jury's finding that Brock and Moore were 160% at fault for the fire (80% each) to support its assertion that the jury may have found Cricket 0% at fault if given a single verdict form. This argument is nothing short of absurd. Through some innovative mathematics, Cricket has attempted to create an "inconsistent result" where there is none.

The claims of the adult plaintiffs and the claims of the child plaintiffs in this case, while consolidated for trial purposes, remained distinct causes of action. Put simply, the jury's determination of the negligence of Brock and Moore vis-a-vis Cricket was irrelevant to its determination of Cricket's negligence vis-a-vis the child plaintiffs. On the child plaintiffs' verdict form, the jury expressly found that Cricket was "negligent in the design of the lighter and that this negligence was a proximate cause of the accident." (J.A. at 171.) As discussed, supra, the jury obviously rejected Cricket's argument that the adult plaintiffs' negligence was a superseding, intervening cause absolving Cricket from liability. Rather, it is clear that the jury, heeding the district court's instructions regarding the principles of negligence, superseding causes, and joint tortfeasors, concluded that (1) Cricket was at least one percent at fault, and (2) the negligence of the adult plaintiffs was foreseeable. We see nothing inconsistent in these conclusions and the verdict forms as completed. Therefore, the district court did not abuse its discretion in refusing to submit the requested interrogatory to the jury.

IV.

Based upon the foregoing, we affirm the district court as to all liability issues.

AFFIRMED

20